**In re DeVerne Richard DAVIS and Mary Louise Davis, Debtors.**

**MID AMERICAN CREDIT UNION, Plaintiff,**

v.

**Deverne Richard DAVIS, Mary Louise Davis, and Royce E. Wallace, Trustee, Defendants.**

**Civ. A. No. 81–1435.**
**Bankruptcy No. 81–10368.**
**Adv. No. 81–0397.**

United States District Court,
D. Kansas.

Oct. 28, 1981.

Eric D. Bruce, Wichita, Kan., for plaintiff, Mid American Credit Union.

Donald B. Clark, Wichita, Kan., for defendants, Deverne Richard and Mary Louise Davis.

Royce E. Wallace, Wichita, Kan., pro se.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This is a bankruptcy appeal brought by the Mid American Credit Union (credit union). The defendant debtors filed a Chapter 13 Plan in which they sought to cure a pre-bankruptcy petition default of a secured note with the credit union after the credit union elected to accelerate the note. Whether the debtors can successfully cure such a default through their Chapter 13 Plan depends on the construction of two sections of the bankruptcy code, 11 U.S.C. § 1322(b)(2) and (b)(5). This Court heard oral argument on this appeal on October 19, 1981, and has considered the brief filed by the credit union as well as Bankruptcy Judge Morton's written memorandum opinion. After a review of the few cases relevant to this dispute and the arguments of counsel, this Court finds that the decision of the bankruptcy judge below should be affirmed.

The mortgage involved in this appeal was a second mortgage evidenced by a note to

the plaintiff credit union dated June 29, 1979, with an unpaid balance of $10,319.89. The first mortgage is to the American Savings Association of Kansas, on which the balance due on February 12, 1981, was $28,-747.03. The third mortgage on the debtors' residence was to the Fourth National Bank & Trust Company, and the amount due on it as of February 23, 1981, was $5,084.84. When the debtors filed their Chapter 13 Petition all three mortgage notes were in default, and their Plan provided for a monthly payment in addition to the regular monthly payment on each note to pay the arrearages accumulated on each mortgage note.

Although the first and third mortgagees took no action regarding the defaults on their notes prior to the debtors' bankruptcy petition, the credit union elected to exercise its acceleration rights under the note on January 22, 1981, by giving the debtors the appropriate notice. The credit union then initiated a state court foreclosure action, but it was automatically stayed when the debtors filed their petition in the instant case. Over the objection of the credit union, the debtors' Chapter 13 Plan was confirmed subject to the preservation of the credit union's right to appeal the stay of their state court foreclosure action.

Chapter 13 was intended to provide wage earners with the power to reorganize their debts in order to retain their property and at the same time repay their debts through a court-appointed trustee according to an approved plan. 11 U.S.C. § 1322(a) and § 1306(b). It is patterned after Chapter 11, which allows qualifying large businesses to do the same thing. Under Chapter 13 the debtor's power to modify his debt obligations to achieve the flexibility necessary for meeting all of his obligations is set forth in Section 1322(b), and the relevant paragraphs of that section are:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> > (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal*

*residence*, or of holders of unsecured claims;

> .   .   .   .   .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>
> .   .   .   .   .

(Emphasis supplied).

It is clear from the legislative history that Congress intended subsection (b)(5) to be applicable to "a security interest in real property that is the debtor's principal residence" despite the language in subsection (b)(2):

> Section 1322(b)(2) of the House Amendment represents a compromise agreement between similar provisions in the House Bill and Senate Amendment. Under the House Amendment the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. *It is intended that a claim secured by the debtor's principal residence may be treated . . . under Section 1322(b)(5) of the House Amendment.* (Emphasis supplied).

124 Cong.Rec. H 11,106 (Sept. 28, 1978); 124 Cong.Rec. S 17,423 (Oct. 6, 1978).

■ The credit union's appeal is based entirely upon the argument that under state law once a creditor has elected to accelerate a note upon default and has filed a foreclosure action in state court, Section 1322(b)(5) can no longer be utilized to "cure" the default. It is clear that where a pre-petition default has occurred, without an acceleration by the mortgagee the debtor may cure the default through Section 1322(b)(5). *In re Johnson*, 6 B.R. 34 (Bkrtcy.N.D.Ill.1980); *In re Hartford*, 7 B.R. 914 (Bkrtcy.D.Me.1981). This Court agrees with the credit union's contention that in Kansas as a general rule an acceler-

ation clause in a note can be invoked to immediately advance the maturity of the note when there is a default. *Farmers & Merchants Bank v. Copple*, 190 Kan. 170, 373 P.2d 219 (1962). In *Matter of LaPaglia*, 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981), which is a case involving a home mortgage and an acceleration followed by the filing of a state court foreclosure action which was stayed, the bankruptcy court ruled that under New York state law the entire balance of the loan was due upon acceleration, and consequently the mortgage could not possibly extend beyond the final payment under the Chapter 13 Plan. However, another bankruptcy judge in the same district allowed a cure of the default after acceleration and even a state court judgment of foreclosure. *In re Taddeo*, 9 B.R. 299 (Bkrtcy.E.D.N.Y.1981). Although Judge Morton, in the case at bar, did not agree with the *Taddeo* case insofar as it would allow a debtor to cure a default even after a state court judgment had been obtained, the reasoning of *Taddeo* was otherwise adopted. *Cf., In re Lynch*, 12 B.R. 533 (Bkrtcy.W.D.Wisc.1981).

█ Although Chapter 11 provides much detail regarding the debt modification allowed large businesses, Chapter 13 in contrast provides relatively little guidance. Since both Chapter 13 and Chapter 11 have the same purpose, the bankruptcy court in *Taddeo* determined both chapters should be read together. Since businesses proceeding under Chapter 11 are allowed to cure loan defaults regardless of whether a creditor has elected to utilize an acceleration clause, 11 U.S.C. § 1124, individual wage earners under Chapter 13 should have the same power despite the absence of specific guidance in Section 1322(b). *Id.*, 9 B.R. at 303. This reasoning is logical and persuasive in light of the debtor rehabilitation purpose behind Chapter 13. *Report of the Commission on the Bankruptcy Laws of the United States*, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., pt. I (1973), *reprinted in* App. 2, Collier on Bankruptcy (15th ed. 1980).

The literal language of Section 1322(b)(5) does not in any way limit when a default may be cured. Instead, it broadly provides "for the curing of any default" so long as the proposed cure is reasonable in time and the plan will expire before the date the final payment on the loan is due. Although acceleration clauses are valid under Kansas law, they cannot be applied when it would conflict with a federal statute. *Id.*, 9 B.R. at 305. Again, 11 U.S.C. § 1124 provides for the cure of defaults regardless of an acceleration clause and applicable state law.

There are strong policy considerations which would support a decision not to allow a default to be cured once a creditor has obtained a foreclosure judgment in state court:

> Permitting a debtor to reinstate the original terms of a defaulted mortgage after a judgment, providing only that it was done prior to sale, would necessarily affect adversely the home mortgage market by making such mortgages less attractive to investors. These are serious policy considerations. Had Congress intended a policy change of this magnitude, with all the complications such a change would produce, it is reasonable to assume that Congress would have used language appropriate to that end. It did not.

*In re Pearson*, 10 B.R. 189, 195 (Bkrtcy.E.D.N.Y.1981). However, this Court is not persuaded that allowing the cure of a pre-petition default after the mere filing of a foreclosure action would be so adverse that it outweighs the liberal rehabilitative purposes of Chapter 13. *See* 5 Collier on Bankruptcy, § 1322.01(E), (15th ed. 1980).

IT IS, THEREFORE, ORDERED, in accordance with the above discussion, that the order of the bankruptcy court below shall be affirmed.