**In re E.Z. CARR, Debtor.**

**Bankruptcy No. 83–01630A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 19, 1983.

Paul C. Parker, Decatur, Ga., for petitioner.

Thomas E. Prior, McCalla, Raymer, Padrick, Cobb & Nichols, Atlanta, Ga., for respondent.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the debtor's objection to the proof of claim filed by First Family Mortgage Corporation ("FFMC"). FFMC's proof of claim included interest on the prepetition arrearages which were to be cured through deferred payments under the plan. The debtor contends that the agreement between the parties did not provide for this additional interest on default payments. FFMC argues that 11 U.S.C. § 1325(a)(5)(B)(ii) requires that interest be included.

The issue presented is whether or not a secured creditor who holds a security interest in the debtor's principal residence is entitled to receive interest on arrearages where the debtor is seeking to cure a default and reinstate a mortgage. FFMC cites *In re Stratton,* 30 B.R. 44, 10 BCD 726 (Bkrtcy.W.D.Mich.1983), as authority for its position. The decision in *Stratton,* appears to contradict itself by first limiting the creditor to the contract rate of interest on the arrearage claim and then disregarding the contract by authorizing additional interest. The Court notes that Michigan law expressly authorizes the accrual of interest on unpaid installment payments, M.S.A.

§ 19.21 [M.C.L.A. § 438.101], whereas Georgia law prohibits interest to be charged on unpaid interest unless the parties so contract, O.C.G.A. § 7–4–17. However, at this time the Court does not have to decide whether state law would be controlling.

A number of other courts have held that 11 U.S.C. § 1325(a)(5)(B)(ii) entitles a secured creditor to the discounted value of the deferred payments to be made under the plan, which means that interest must be paid on the secured creditor's claim. See, e.g., *In re Marx,* 11 B.R. 819 (Bkrtcy.S.D. Ohio 1981); *In re Gregory,* 8 B.R. 256 (Bkrtcy.S.D.N.Y.1981); *In re Hibbert,* 14 B.R. 891 (Bkrtcy.E.D.N.Y.1981). However, these opinions reflect a cursory application of 11 U.S.C. § 1325(a)(5)(B)(ii) by awarding interest without considering the special treatment given the cure and reinstatement of a mortgage under §§ 1322 and 1124 of the Code. The relevant provisions of the Code are unclear, and thus, cannot be perfunctorily applied.

This Court agrees with Judge Kelley's determination of the applicability of 11 U.S.C. § 1325(a)(5)(B)(ii) in a similar situation. See *In re Simpkins,* 16 B.R. 956 (Bkrtcy.E.D.Tenn.1982). Judge Kelley, after an examination of the relevant legislative history, held that

"... as to a claim secured only by the debtor's home the general idea is that the contract will remain in force as to the amount of payment. The claimant should be paid the interest after maturity for which the contract provides. The time value of money is irrelevant. The Court reemphasizes that § 1322(b)(2) creates a special exception to § 1325(a)(5)(B)." *In re Simpkins, supra,* at 965.

As interpreted by this Court, § 1322(b) allows modification of the rights of a holder of an allowed secured claim, and to protect said claimant he is entitled to interest pursuant to § 1325(a)(5)(B)(ii). As the contractual rights of a holder of a claim secured by the debtor's principal residence are expressly excluded from modification under

§ 1322(b)(2), the awarding of interest pursuant to § 1325(a)(5)(B)(ii) would constitute modification of the contract in contradiction to § 1322(b)(2). Although *Simpkins* dealt primarily with a note secured only by the debtor's principal residence where the last payment would be due before the last payment under the plan is due, its reasoning is even more applicable to the case *sub judice,* since the subject claim would be nondischargeable pursuant to 11 U.S.C. § 1328(a)(1).

The import of the decision in *Simpkins* is that the special protection afforded creditors in a cure and reinstatement of a mortgage on the debtor's principal residence prevents the application of the "cram-down" provisions of § 1325(a)(5)(B).

"Since claims on which the last payment is due after the expiration of the debtor's plan are non-dischargeable under 11 U.S.C. § 1328(a)(1), mortgagors must invariably undertake full repayment of their mortgage debts. Moreover, unlike other secured claims, these claims are not subject to cram-down by the debtor." *In re Taddeo,* 9 B.R. 299, 304 (Bkrtcy.E.D.N.Y.1981), aff'd, 685 F.2d 24, 9 B.C.D. 556 (2d Cir.1982).

Thus, the case *sub judice* should be viewed in light of the legislative intent regarding the cure and reinstatement of mortgages, and not that of the cram-down provisions of the Code and of § 1325(a)(5)(B) in particular. The Notes of the Committee on the Judiciary, S.Rep. No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787, support the view that a claim secured only by a security interest in real property that is the debtor's principal residence creates an exception to the 11 U.S.C. § 1325(a)(5)(B) requirement that the secured creditor is entitled to the discounted value of the deferred payments. The House Report states that to the extent a secured creditor in a Chapter 13 is entitled to receive the discounted present value of deferred payments to be made on his claim, he is to be treated identically with a recourse creditor under 11 U.S.C. § 1111(b)(1), the only exception being that a secured creditor in a Chapter 13 may receive any property of a value, as of

the effective date of the plan, equal to the allowed amount of the creditor's secured claim, rather than being restricted to receiving deferred cash payments. 11 U.S.C. § 1111(b) deals with partially secured creditors and its purpose is to enable these creditors to protect themselves. 5 *Collier on Bankruptcy* ¶ 1111.02, p. 1111–14, 1111–15 (15th ed. 1980). Thus, it seems that Congress intended that 11 U.S.C. § 1325(a)(5)(B) apply only to those creditors whose rights needed protection, *i.e.,* those creditors whose claims could be modified or whose collateral was subject to rapid depreciation.

The legislative intent behind the cure and reinstatement of a mortgage in a Chapter 13 proceeding may be further ascertained by comparison with comparable debt modification provisions in Chapter 11 of the Bankruptcy Code. In *In re Hawley,* 6 CBC 2d 1496 (Bankr.E.D.N.Y.1982), Judge Parente noted that Chapter 13 should be read *"in pari materia* with Chapter 11 provisions." The Second Circuit Court of Appeals in *In re Taddeo,* 685 F.2d 24, 9 B.C.D. 556, 6 C.B.C.2d 1201 (2d Cir.1982) stated that curing a default in Chapter 11 means the same thing as it does in Chapters 7 or 13. Furthermore, 11 U.S.C. § 1322(b)(10) provides that: "The plan may include any other appropriate provision not inconsistent with this title." Therefore, this Court may properly look to Chapter 11 provisions for guidance in understanding the cure and reinstatement of a mortgage in a Chapter 13 context. *In re Davis,* 16 B.R. 473, 8 B.C.D. 635 (D.C.D.Kan.1981).

The holding of this case, that § 1325(a)(5)(B)(ii) does not entitle the creditor to receive the discounted value of prepetition mortgage arrearages being cured through deferred payments, does not, in all instances, bar assessment of interest upon default. In a Chapter 11 proceeding, *In re Masnorth Corporation,* 28 B.R. 892, 10 B.C.D. 553 (Bkrtcy.N.D.Ga.1982), this Court held, *inter alia,* that the contract rate, and not the market rate, is the correct interest rate to be charged a debtor on arrearages which are paid a creditor in connection with

the cure of default and reinstatement of a mortgage. More broadly, this Court implicitly held that the parties are restricted to the terms of their contract. If the contract so provides the creditor may receive interest. To hold otherwise would result in the modification of the rights of holders of secured claims secured only by a security interest in real property that is the debtor's principal residence.

Although the creditor in *Masnorth* was seeking market rate interest on the arrearages, which were going to be paid off on the effective date of the plan, the reasoning is equally applicable to a creditor who seeks interest on arrearages which are going to be paid off through deferred payments. It would be inconsistent to disallow interest from the time of default until the effective date of the plan, *In re Masnorth, supra,* but allow a creditor interest on the arrearages from the effective date of the plan forward as sought by FFMC. Since interest on pre-petition arrearages could not be collected in a Chapter 11 proceeding unless the contract so provided, it would be illogical to allow interest in the more liberal, debtor-oriented Chapter 13 context. See Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., pt. 1 (1973), reprinted in App. 2 *Collier on Bankruptcy* (15th ed. 1980). The contract between the parties could have provided for interest on the defaulted payments. The creditor is entitled to recover only the interest, fees, costs, and charges provided for in the agreement under which his claim arose.

Therefore, for the above-stated reasons, the debtor's objection to FFMC's proof of claim is upheld.

IT IS SO ORDERED.