In the Matter of Catherine CHRISTIAN
f/k/a Catherine Jenkins.

Bankruptcy No. 82–00987A

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 22, 1983.

G. Alfred Brunavs, Clarkston, Ga., for debtor.

William D. Montgomery, Johnson & Montgomery, Atlanta, Ga., for creditor.

**230**

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Debtor objected to the proof of claim, in the amount of $57,254.45, filed by American Fletcher National Bank and Trust Company, ("AFNB"). AFNB requested a hearing on the debtor's objection. After the hearing, both sides briefed the two issues before the Court: (1) Whether a Chapter 13 debtor may cure defaulted obligations and reinstate current obligations pursuant to the original installment schedule on debtor's principal residence under a Note and Deed to Secure Debt which had accelerated the total indebtedness prior to the filing of the Chapter 13 petition; and, (2) if the debtor's obligations can be so cured and reinstated, whether the debtor must pay attorney's fees and expenses which the creditor incurred in accelerating the Note and instituting foreclosure proceedings under the Deed to Secure Debt as well as interest on the creditor's total oversecured claim.

### Findings of Fact

1. Debtor and her husband, joint mortgagors, were involved in divorce proceedings and failed to make monthly mortgage payments on their house to AFNB the mortgagee, on October 1 and November 1, 1981.

2. On November 20, 1981, debtor's divorce attorney requested an extension of time from AFNB to cure the default pending resolution of the divorce.

3. No mortgage payments were made on December 1, 1981, or January 1, 1982.

4. On January 19, 1982, counsel for AFNB sent a collection letter to the debtor and her husband which outlined the following: a default had occurred; payment in full was demanded; the default could be cured by payment of $2,420.65 on or before 30 days; failure to make such payment would result in the creditor's right to immediate acceleration of the Note and foreclosure; if the money was not paid within 10 days, attorneys fees would also be assessed, pursuant to the agreement between the

parties and the statutory provisions of the Georgia Code. Each item outlined was present in the agreement executed between the debtor and AFNB.

5. No mortgage payment was made on February 1, 1982.

6. On the morning of March 2, 1982, the date the foreclosure sale was to occur, and prior to the sale, debtor filed a Chapter 13 petition.

7. Debtor was granted a divorce from husband, along with full ownership rights to the house, $23,740.00, and $2,350.00 post-judgment attorney's fees.

8. On March 30, 1982, AFNB filed its proof of claim in the amount of $57,254.45 ($49,595.38 principal balance, $2,605.57 earned interest, $5,364.00 attorney's fees and expenses, less $310.50 for escrow funds).

9. On May 14, 1982, debtor filed a proof of claim for AFNB in the amount of $3,000.00 as total for pre-petition arrearage.

10. Debtor's extension plan proposed curing her pre-petition arrearage of approximately $3,000.00 by payments through the trustee pursuant to 11 U.S.C. § 1322(a)(1) and resuming current monthly payments according to her original loan schedule to satisfy 11 U.S.C. § 1322(a)(2), by making such payments directly to AFNB.

11. The collateral for the loan made by AFNB was the principal residence which was valued by the debtor at $95,000.00.

### DISCUSSION

#### A

█ As to the first issue, whether the debtor can cure mortgage arrearages and reinstate monthly payments according to the original loan schedules, AFNB offers little argument in opposition except to point out that § 1322(b)(5) does not authorize such reinstatement. A similar argument was made by the creditor in *In re Taddeo*, 685 F.2d 24 (CA2, 1982). The Second Circuit, affirming the Bankruptcy Court's and District Court's opinions in *Taddeo*, addressed the creditor's argument that curing

the default was equivalent to a modification of the rights of holders with a secured interest in the debtor's principal residence. The Second Circuit held that "the power to cure is different from the power to modify" and "curing a default" means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified." *Id.* at 28, 26. Again, the Second Circuit after reviewing the legislative history and policy, found that "§ 1322(a)(5) was intended to permit the cure and deacceleration of secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition." *Id.* at 27. The issue seems settled by the rationale of *Taddeo.* See also *In re Smith,* 19 B.R. 592, 594 (Bkrtcy.N.D.Ga.,1982) (a Georgia case expressly following *Taddeo*). In the instant case, the automatic stay prevented the foreclosure sale from occurring. Under *Taddeo* and *Smith,* § 1322(b)(5) does not prevent the debtor from curing arrearages and resuming current monthly payments according to the original loan schedule.

### B

■ As to the first part of the second issue, whether AFNB is entitled to attorney's fees and expenses on its allowed secured claim as a result of accelerating the Note and instituting foreclosure proceedings, one of AFNB's arguments, unrefuted by the debtor's reasoning, is persuasive.

AFNB claims that it meets the Code criteria of § 506(b) and is, therefore, entitled to attorney's fees and costs. Section 506(b) authorizes payment of "any reasonable fees, costs, or charges provided under the agreement under which such claim arose" for a creditor whose claim "is secured by property the value of which . . . is greater than the amount of such claim." The agreement between AFNB and the debtor required the debtor to pay all reasonable costs and expenses under a number of circumstances including reinstatement of the loan by the borrower.[1] AFNB's claim of $57,254.45 was secured by the debtor's principal residence, valued by the debtor at $95,000.00. AFNB is clearly an oversecured creditor. Thus, AFNB satisfies the requirements of § 506(b). See also *In re Masnorth Corp.,* 28 B.R. 892, 897 (Bkrtcy.N.D.Ga.,1983); *In re Anderson,* 28 B.R. 231, 232 (Bkrtcy.N.D. Ga.,1983).

■ Finally, as to the second part of the issue, whether AFNB is entitled to interest on its claim, AFNB argues that the debtor's proposal to pay approximately $3,000.00 as the total pre-petition arrearage is contrary to the requirement of § 1325(a)(5)(B). AFNB correctly states that § 1325(a)(5)(B) provides that a creditor is entitled to the present value of its entire allowed secured claim. *In re Cooper,* 7 B.R. 537 (Bkrtcy.N. D.Ga.,1980). AFNB argues that accordingly it should receive interest payments from the debtor at the rate provided in AFNB's Note (8¾ percent per annum)[2] on its secured claim, e.g., attorney's fees, expenses, and arrearage.

■ Analysis of AFNB's argument begins with the recognition that AFNB has failed to identify correctly the controlling statutory section. In the instant case, the

---

1. The Addendum to the Deed to Secure Debt, executed by the parties on September 23, 1977, reads in part:

   If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Deed to Secure Debt to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorney's fees.

   Additionally, the Note, executed by the parties concurrently with the Deed to Secure Debt, reads in part:

   "If suit is brought to collect this Note, the noteholder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees."

2. The Note, referred to in footnote 1 above, required the borrower to pay interest on the unpaid principal balance at the rate of 8¾ percent per annum.

secured creditor is the first mortgagee of the debtor's principal residence. The Code supplies a statutory provision which specifically deals with the rights of a secured claim holder whose security interest is in the debtor's principal residence. § 1322(b)(2): "The plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." This provision protects AFNB from any modification of its rights. In effect, § 1322(b)(2) operates as an exception to the "cram down" provisions of § 1325(a)(5)(B). *Carr* at 344–45, citing *In re Simpkins,* 16 B.R. 956, 963–64 (Bkrtcy.E.D.Tenn.1982).

What AFNB is entitled to must be ascertained by reading together § 1322(b)(2) and § 506(b). Section 1322(b)(2) prevents the secured party with a security interest in the debtor's principle residence from suffering a modification of his rights. Those rights are determined by the agreement executed between the parties. Section 506, which allows interest on an oversecured claim,[3] also requires an examination of the agreement under which the claim arose. In this case, the agreement executed by the parties contained the following relevant terms: (1) interest payable at the rate of 8¾ percent per annum on the unpaid principal balance; (2) a late charge of 4 percent of any monthly installment not received by the noteholder within a defined timely period; (3) all reasonable costs and expenses of collection, including but not limited to reasonable attorney's fees. No language in the agreement expressly provided for the borrower to pay interest on defaulted payments, beyond the 8¾ percent per annum on the unpaid principal balance and late charge interest fee of 4 percent, or interest on attorney's fees and expenses. AFNB's contention that it is entitled to such an award has no contractual basis, and therefore no statutory basis in the Code. *Accord Carr* at 345–46.

For the reasons outlined above, this Court holds that the debtor may cure defaulted obligations and reinstate current obligations pursuant to the original installment schedule, and AFNB is entitled to collect under the terms of the contract pursuant to § 1322(b)(2) and § 506(b). Those terms direct the borrower, in order to cure and reinstate, to pay to AFNB the following: the unpaid monthly payment with interest at 8¾ percent per annum on those monthly payments; a late charge of 4 percent on any monthly installment not received within in the appropriate time; and, all reasonable costs and expenses of collection.

**3.** *See In re Cooper,* 7 B.R. 537, 542, n. 7, (Bkrtcy.N.D.Ga.1980). *Cooper* was governed by § 1325(a)(5)(B)(ii) because the security interest of the debtor was not in the debtor's principle residence. This Court noted in footnote 7 that where a debtor's principal residence was the mortgagee's security interest, § 1322(b)(2) would "prohibit[s] the modification of the loan agreement ... thus, the payments of the defaults allowed under § 1322(b)(5), to be made within a reasonable time, may not be greater than those additions and charges specified in the loan agreement in event of default." *See also In re Carr,* 32 B.R. 343, 344–45 (Bkrtcy.N.D.Ga.1983). The Court applied § 1322(b)(2) and not § 1325(a)(5)(B)(ii) to a question regarding pre-petition arrearages on a first mortgagee's security interest in the debtor's principal residence. The Court held § 1322(b)(2) applicable because of the special treatment given the cure and reinstatement provisions of a mortgagee's interest in the debtor's principal residence.

But cf. *In re Evans,* 20 B.R. 175 (Bkrtcy.E.D. Penn.1982). The *Evans* Court applied § 1325(a)(5)(B) to a situation in which the secured creditor held a first mortgage on the debtor's property without acknowledging or questioning the applicability of § 1322(b)(2). For the reasons stated in *Cooper* and *Carr, supra,* this court rejects the *Evans'* Court use of § 1325(a)(5)(B).