**In re Robert J. TRIGWELL, Debtor.**

**Bankruptcy No. SAX 86–04669 JR.**

United States Bankruptcy Court,
C.D. California.

Dec. 4, 1986.

Bruce R. Fink, Tustin, Cal., for debtor.

Brian N. Winn, Anaheim, Cal., for the creditor.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtor Robert J. Trigwell filed his Chapter 13 petition on August 21, 1986. At the confirmation hearing on October 6, 1986, Merit Home Loan Service Company ("Merit"), secured creditor, objected to confirmation on the following grounds: (1) the plan failed to provide interest on pre-petition arrearages pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii); (2) the plan was filed in bad faith because debtor had not paid a single pre-petition payment to Merit; (3) the debtor filed a Notice of Pendency of Action ("Notice") on the property with the county recorder's office.

■ Dealing first with the Notice objection, the filing of the Notice on the property is not an appropriate basis for denying confirmation. It is not inconsistent with any provision of the Bankruptcy Code or other applicable law. In addition, the filing does not conflict with any of the requirements for confirmation as set forth in 11 U.S.C. § 1325.

■ As for the "bad faith" objection, failure to pay the pre-petition debt of a creditor does not preclude a debtor from seeking the protection of Chapter 13 and obtaining a "fresh start" through the confirmation process. No further comment is needed on this point.

This brings me to the first objection and Merit's demand that the debtor pay interest on pre-petition arrearages in accordance with the requirement of 11 U.S.C. § 1325(a)(5)(B)(ii). Merit's objection is well founded. Interest should be paid on the arrearage. Furthermore, I hold that the applicable interest rate should be the rate of interest which Merit charges on comparable home loans.

## DISCUSSION

■ Debtor opposes Merit's position and seeks to have its plan confirmed without having to pay interest on the arrearage. However, debtor has not filed any papers to support his position. In addition, debtor

did not state at the hearing his basis for nonpayment of interest on the arrearage.

Applicable provisions of the Bankruptcy Code are sections 506(b), 1322(b)(2) and (5), and 1325(a)(5)(B)(ii). In analyzing the interplay of these provisions, different courts have reached different results. See *In re Christian*, 35 B.R. 229 (Bankr.N.D.Ga. 1983) (no interest on defaults cured through the plan unless the contract provides for interest on defaulted payments). *Contra, In re McCall*, 57 B.R. 642 (Bankr. E.D.Pa.1986) (interest payable on arrearage).

Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees costs, or charges provided for under the agreement under which such claim arose.

In the instant case, Merit is a fully secured creditor (the debtor's schedules list the house at a value of $110,000 and the aggregate liens on the property at $78,313). The amount of the arrearage on the Merit loan is $6,238 as of the filing date.

The effect of section 506(b) is to fix the amount of the arrearage as an allowed secured claim. Since the agreement between the debtor and Merit does not provide for interest on the arrearage, there is no contractual basis for allowing interest on the arrearage. See *In re Carr*, 32 B.R. 343 (Bankr.N.D.Ga.1983) (absent provision in contract, no interest on arrearage); *accord, In re Terry*, 780 F.2d 894 (11th Cir. 1986). Accordingly, this court does not grant interest on the arrearage based on section 506(b).

However, a creditor has additional rights with respect to an arrearage pursuant to the confirmation provision of Chapter 13. Section 1325(a)(5)(B)(ii) imposes a present value standard for the payment of an allowed secured claim under the plan. This section provides in pertinent part:

Confirmation of plan.

(a) [T]he court shall confirm a plan if ...

(5) with respect to each allowed secured claim provided for by the plan ...

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

The debtor's plan provides for Merit to retain the lien on the debtor's residence. Also, the arrearage is an allowed secured claim of Merit. Under section 1325(a)(5)(B)(ii), the plan must provide Merit with the present value of the amount of the arrearage in order for the plan to be confirmed. See *In re Colegrove*, 771 F.2d 119 (6th Cir.1985); *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Gincastro*, 48 B.R. 662 (Bankr.D.R.I.1985).

I assume that if debtor had briefed the issue, he would ask this court to follow those cases which interpret sections 1322(b)(2) and (5) as preventing the application of section 1325(a)(5)(B)(ii). See *In re Terry, supra* at 897; *In re Christian, supra* at 232. In these cases, the courts have held that section 1325(a)(5)(B)(ii) does not apply because an award of interest on the arrearage would constitute a modification of the contract in contradiction to section 1322(b)(2). Sections 1322(b)(2) and (5) provide in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may ...

(2) modify the rights of holder of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ...;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment

is due after the date on which the final payment under the plan is due;

In determining the meaning and application of and interrelationships between these provisions of the Bankruptcy Code, the plain meaning of the language must control unless there is convincing evidence to the contrary that Congress intended something different by the words it used. *See Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). A review of the legislative history governing these provisions does not indicate to me that Congress intended something different than the plain· meaning of the language used in these provisions. Section 1322(b)(2) clearly states that the rights of a creditor holding a security interest in real property that is the debtor's principal residence cannot be modified. Obviously, this is a provision designed by Congress to protect a creditor with this type of secured claim from having its rights under the contract changed by the debtor in bankruptcy. However, subsection (5) creates a specific and narrow exception to this general rule. It allows the debtor to cure a default within a reasonable period of time through a series of payments provided the last payment on the secured obligation occurs after the term of the plan.

The debtor's plan cures the arrearage over a 24 month period. This is permitted under section 1322(b)(5). Is section 1325(a)(5)(B) inconsistent with sections 1322(b)(2) and (5)? I do not think so. Common sense dictates that they are not inconsistent. Section 1325(a)(5)(B)(ii) merely provides that if the debtor cures under section 1322(b)(5) and provides for deferred payments in his plan, he should give the secured creditor what he deserves, the full present value of its allowed secured claim. It does not make sense that Congress intended the exception to 1322(b)(2) (which benefits the home mortgage lender) to be used to single out and discriminate against the home mortgage lender as the only class of secured lender unable to receive interest on arrearages arising under a secured debt. *See In re Nesmith,* 57 B.R. 348, 349 (Bankr.E.D.Pa.1986).

Section 1325(a)(5)(B)(ii) codifies the principle that future payment has less value than immediate payment. To equalize the values, interest is paid. Therefore the debtor must pay Merit interest so that Merit will receive the full value of the arrearage in accordance with section 1325(a)(5)(B)(ii). This is the price the debtor pays to defer payment.

Having decided that interest on the arrearage is mandated by section 1325(a)(5)(B)(ii), I must now decide what interest rate should apply. Different courts have applied different interest rates in this situation. *See In re Gincastro, supra* at 665 (rate at which creditor earns interest); *In re Thorne,* 34 B.R. 428, 431 (Bankr.E.D.Tenn.1983) (contract rate). The Sixth Circuit Court of Appeals in *In re Colegrove, supra,* applied the prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditor's claim and the confirmation of the plan in bankruptcy with a maximum limitation of the underlying contract rate of interest. I believe a contract rate of interest is irrelevant. I agree with the Judge Celebrezze's dissent in the case to the extent he finds the contract rate of interest to be irrelevant. *Id.* at 124. The creditor should be compensated for not having the full amount of the arrearage available to reinvest. This has nothing to do with the contract rate of interest. If Merit had the funds, it would likely reinvest them in similar types of secured loans at the current market rate. I, therefore, hold that the applicable interest rate should be the rate Merit charges on similar home loans at the time the plan is confirmed.

Therefore, I uphold the objection of Merit to the confirmation of the plan and give the debtor thirty days from the date of this Memorandum to file an amended plan in compliance with this Memorandum.