**In re Mike CATLIN and Victoria M. Catlin, Debtors.**

**Bankruptcy No. 3–87–1297.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Nov. 23, 1987.

Michael Holverson, St. Paul, Minn., for debtor.

Mary Langan, Minneapolis, Minn., for First Minnesota Sav. Bank.

J.J. Mickelson, Minneapolis, Minn., Trustee.

### ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

At St. Paul, Minnesota.

Before the Court is a dispute between First Minnesota Savings Bank, F.S.B. (First

Minnesota) and the Debtors, regarding entitlement by First Minnesota to interest on prepetition arrearages in mortgage payments which the Debtors propose to cure under their Chapter 13 plan. Mary E. Langan represents First Minnesota; Michael K. Holverson represents the Debtors; and Edward Bergquist represents the Trustee, J. J. Mickelson. The parties submitted briefs on the specific issue of whether a creditor, whose claim is secured only by a security interest in a debtor's principal residence, is entitled to interest on prepetition interest arrearages, where the debtor seeks to cure the default under a Chapter 13 plan and reinstate the mortgage contract. Based upon the memoranda of counsel, and upon the records and files herein, the Court being fully advised in the matter now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

First Minnesota holds a first mortgage, dated April 27, 1978, on property now owned by Debtors, in Washington County, Minnesota. This property is Debtors' principal residence, and the mortgage is the only security for payment of a promissory note owed to the Bank by the Debtors. The note was in the original principal amount of $45,800.00 with interest at the rate of 8.75 percent per annum. Under the note, the Debtors are obligated to make monthly payments to First Minnesota of $360.45 until the principal and interest are fully paid. Failure to make any payment entitles the Bank to accelerate the full amount of the debt and foreclose its mortgage. Neither the mortgage note nor the mortgage deed provides for payment of interest on arrearages.

Debtors filed for relief under Chapter 13 on April 29, 1987. Having failed to make payments for the months of December 1986 and January through April 1987, their prepetition default totals $12,937.08. At filing, the total amount owing on the mortgage was $54,550.91 and, according to the Debtors' schedules, they had a paper equity in the property of approximately $2,500.00.

Under their Chapter 13 plan, the Debtors proposed to: 1) cure the prepetition delinquency on the mortgage by monthly payments of $546.00 to First Minnesota through the Chapter 13 trustee; and 2) maintain the payments which come due post-petition on the mortgage while the case is pending. As proposed, the plan would cure the delinquency on First Minnesota's mortgage without interest and within 24 months from the date of confirmation.

First Minnesota argues that the Debtors' plan can be confirmed over its objection only if it is paid interest on the full amount of the arrearages at the contract rate from the date of confirmation, citing 11 U.S.C. § 1325(a)(5)(B). It also contends that the allowed amount of its claim at confirmation includes interest on arrearages at the contract rate from the date the petition was filed to the date of confirmation, citing 11 U.S.C. § 506(b).

The Debtors argue that First Minnesota is not entitled to interest under 11 U.S.C. § 1325(a)(5)(B), as that section was not intended to apply to a secured party whose claim is secured only by a security interest in a debtor's principal residence. They contend that the claim is governed solely by 11 U.S.C. § 1322(b)(2) and (b)(5). Payment of interest on mortgage arrearages where the contract does not provide for payment of interest, they argue, is a prohibited modification of the contract within the meaning of § 1322(b)(2). Alternatively, the Debtors assert that a claim to the arrearages is not a secured or unsecured claim within the meaning of 11 U.S.C. § 1325(a)(5)(B), and that it must be treated in accordance with the parties contract and applicable non-bankruptcy law.

### II.

Section 1322(b)(2) and (b)(5) provide:

(b) [T]he plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing

of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . . .

These two subdivisions constitute an impairment statute. As the statute relates to claims secured only by a debtor's principal residence, it is a limitation on a debtor's ability to impair, or leave impaired, the rights of holders of those claims. The rights of such holders, and in effect the claims themselves, can be impaired by a plan only to the limited extent of a provision affording a debtor the bankruptcy remedy of a reasonable period to repay prepetition defaults.

11 U.S.C. §§ 502(b) and 506(a) and (b) are more general claim impairment statutes. To the extent that § 1322(b)(2) and (5) are inconsistent with and contradictory to these Chapter 5 statutes, the § 1322(b)(2) and (5) provisions supersede them.

■ Accordingly, in a Chapter 13 case, the allowed amount of a claim secured only by a security interest in the principal residence of a debtor is, at filing, the balance owing on the debt without regard to the value of the collateral—§ 506(a) notwithstanding.[1] Application of § 506(a), where the value of the collateral is less than the debt, would modify the rights of the holder

of a claim secured only by a security interest in the principal residence of a Debtor beyond the permissible impairment provided in § 1322(b)(2) and (b)(5).

Similarly, to the extent that, prior to confirmation, operation of § 506(b) would otherwise limit post-petition interest on the *principal* balance of the claim up to the value of the collateral, § 506(b) would also modify the rights of the holder beyond permissible impairment in § 1322(b)(2) and (b)(5).[2] Absent bankruptcy, interest continues to run on principal regardless of the value of the underlying collateral at any given point in time; and, the total balance constitutes the entire secured debt.

■ Subsections (b)(2) and (5) of § 1322, as they apply to the holders of claims secured only by a security interest in a debtor's principal residence, are intended to limit the ability of a debtor to impair the rights of the holders of those claims. These subsections are not intended to preclude the holders from realizing the rights and benefits conferred by other sections of the Code.

In light of that, the next logical inquiry, but for the existence of Local Rule 134, would be whether 11 U.S.C. § 506(b) allows, absent agreement of the parties, for the assessment of post-petition interest prior to confirmation on the prepetition defaulted interest that is part of the allowed secured claim at filing.[3] Rule 134, how-

---

**1.** 11 U.S.C. § 506(a) limits the allowed amount of a secured claim generally to the value of the collateral securing it.

**2.** Section 506(b) generally allows post-petition interest on a secured claim, but only if the value of the collateral exceeds the claim and then only up to the value of the collateral, less certain other charges in favor the estate where appropriate. *See* footnote 3, *infra.*

**3.** The plain meaning of § 506(b) in conjunction with § 502 is that it does, up to the value of the collateral. Section 506(b) states:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement which such claim arose.

Several courts have said that § 506(b) does not allow the assessment of post-petition interest on prepetition defaulted interest, but the reasoning is based in large part on their reading a phantom comma after the word "charges" in the statute. Place a comma there and the allowance of post-petition interest is dependent upon the security agreement of the parties. Since security agreements do not provide for the assessment of interest on interest, these courts conclude that it is not part of the allowed amount of the secured claim that is entitled interest under § 506(b). *See In re Gincastro,* 48 B.R. 662 (Bankr.D.R.I.1985); *In re Trigwell,* 67 B.R. 808 (Bankr.C.D.Cal.1986); *Ford Motor Co. v. Johnston,* 44 B.R. 667 (Bankr.Mo.1984); *In re Evans,* 20 B.R. 175 (E.D.Pa.1982); *see also* 3 *King* Colliers on Bankr. ¶¶ 506.05, 506–40 (15th Ed. 1987).

One difficulty with this line of reasoning is that there is no comma after the word "charges" in § 506(b). Furthermore, certain secured

ever, renders the meaning of § 506(b) irrelevant because of the Rule's application through § 1325(a)(5)(B). That section provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; ....

Pursuant to this Section, a creditor with an allowed secured claim who does not accept the plan or receive the collateral securing its claim, must receive the present value as of the effective date of the plan, of the allowed amount of its claim. This present value is arrived at by providing interest on the face amount of the allowed secured claim, where the property distributed to such creditor is deferred cash payments. *In re Schyma,* 68 B.R. 52, 66 (Bankr.D. Minn.1985). Local Rule 134(a) provides

that the term "effective date of the plan" in Chapter 13 of the Code is "deemed the date the petition was filed".[4]

Section 1325(a)(5)(B) is a cramdown provision. Cramdown provisions, by their very nature, operate to determine confirmability of plans rejected by creditors holding impaired claims. While § 1322(b)(2) and (b)(5) determine the extent to which First Minnesota's claim can be impaired by a plan, § 1325(a)(5)(B) determines under what circumstances the plan containing the Bank's impaired claim can be confirmed over its objection. Subsections 1322(b)(2) and (b)(5) do not supersede § 1325(a)(5)(B). The two sections serve entirely different purposes under the code; they are not inconsistent or contradictory, but are complementary.

■ Based on the foregoing, the face amount of the allowed secured claim of First Minnesota is $54,550.91, which is the total amount due on the debt at filing of the petition. Determination of the allowed amount of the secured claim is without regard to the value of the collateral in light of the nature of the claim and the limitations on its impairment found in 11 U.S.C. § 1322(b)(2) and (5). Because the claim is impaired under the Debtors' Chapter 13 plan; because First Minnesota has not accepted the plan; and because the Debtors are not surrendering the property, they

claims are not based on underlying agreements, yet they are entitled to the accrual of interest as part of those claims absent bankruptcy. Tax liens and judgments are two examples. There is no apparent reason why Congress would discriminate against these types of claims by denying to the holders post-petition interest where continued accrual is otherwise supported by the value of the collateral. Placement of the phantom comma after the word "charges" in § 506(b) alters the plain meaning of the statute to make the allowance of *any* post-petition interest on a secured claim dependent upon an underlying agreement of the parties; arbitrarily denies to secured creditors whose claims are not based on agreements, any post-petition interest on their claims; and looks suspiciously like legislation by judicial fiat.

On the other hand, application of the plain meaning of § 506(b) produces a curious result because it not only preserves for the creditor its benefit of the bargain during pendency of a case prior to restructure of the debt; but, it enhances

the creditor's position through an entitlement that likely would not exist absent bankruptcy—the right to interest on delinquent interest which has not been made part of a restructured debt under a confirmed plan.

4. Rule 134(a) provides:
The plan in chapter 13 cases shall be filed under Rule 3015, shall be accompanied by sufficient copies thereof to enable the clerk to include a copy with the notice under Local Rule 132(h), and shall conform to Local Form 235. The term 'effective date of the plan' in the plan and chapter 13 of the Code is deemed the date the petition was filed. Pursuant to § 1326(a)(1) of the Code, the plan shall provide by inserted date therein that the first payment to the trustee shall be paid, and the debtor shall make payment, within 30 days after the date the plan was filed.
U.S.Bankr.Ct., Dist. of Minn., Local Rules & Forms, Nov. 1986. Constitutionality of the Rule is not at issue in this proceeding.

must pay First Minnesota interest on the allowed amount of the secured claim as of the effective date of the plan, which is, by operation of Local Rule 134(a), the date the petition was filed. Interest on the unimpaired portion of the claim (accrual by maintenance of post-petition payments on post-petition principal) which is not being distributed under the plan, is at the contract rate. Interest on the impaired portion of the claim (prepetition default of accrued interest, principal and other charges, if any) that is to be distributed under the plan on account of the claim is at an appropriate discount rate.

First Minnesota argues that, in this case, the appropriate discount rate applicable under 11 U.S.C. § 1325(a)(5)(B)(ii) to the impaired portion of its claim being distributed under the plan is the contract rate of 8.75 percent. The Debtors do not dispute its appropriateness. Accordingly, the Court accepts 8.75 percent as the discount rate applicable to the impaired portion of the Bank's claim to be distributed under the plan.

### III.

Two Circuits have determined the issue of a creditor's entitlement under Chapter 13 to interest on principal residence mortgage interest arrears where the mortgage is the only security against the debt. The Sixth Circuit has ruled that 11 U.S.C. § 1325(a)(5)(B) mandates payment of interest on the arrears, while the 11th Circuit has ruled that 11 U.S.C. § 1322(b)(2) and (5) preclude payment of interest. *See In re Colegrove*, 771 F.2d 119 (6th Cir.1985) and *In re Terry*, 780 F.2d 894 (11th Cir.1985). Numerous bankruptcy courts have also considered the issue and many lower court opinions have been published on it. *See In re Nesmith*, 57 B.R. 348 (Bankr.E.D.Pa. 1986) (interest permitted under 11 U.S.C. § 1325(a)(5)(B)); *In re Trigwell*, 67 B.R. 808 (Bankr.C.D.Cal.1986) (interest permitted); *In re Van Gordon*, 69 B.R. 545 (Bankr.D. Mont.1987) (interest permitted); *In re Gincastro*, 48 B.R. 662 (Bankr.D.R.I. 1985) (interest permitted); *In re Einspahr*, 30 B.R. 356 (Bankr.E.D.Pa.1983) (interest permitted); *In re Stratton*, 30 B.R. 44

(Bankr.W. D.Mich.1983) (interest permitted); *In re Carr*, 36 B.R. 381 (Bankr.N.D. Ga.1984) (interest not permitted under 11 U.S.C. § 1325(a)(5)(B)); *In re Small*, 65 B.R. 686, 15 C.B.C.2d 802 (E.D.Pa.1986) (interest not permitted); *In re Harmon*, 72 B.R. 458 (Bankr.E.D.Pa.1987) (interest not permitted); *In re Ward*, 73 B.R. 119 (Bankr.N.D. Ga.1987) (interest not permitted); *In re Christian*, 35 B.R. 229 (Bankr. N.D.Ga. 1983) (interest not permitted).

An underlying concern of those decisions that disallow the assessment of interest post-petition on prepetition delinquent interest on homestead mortgages may be that it is unfairly burdensome to a debtor who is making a good-faith attempt to pay all or a substantial portion of his debt, to require the payment of an amount representing a claim that is, in effect, created in favor of a creditor by the Bankruptcy Code itself. The payment of interest on interest is rarely, if ever, directly available to a creditor outside the context of bankruptcy.

If allowable under § 506(b) prior to confirmation, it is a windfall to the creditor. Section 506 is not an adequate protection statute intended to maintain the status quo pending a confirmed plan or other disposition of the case. It does not confer a statutory right in order to balance against the loss of another right suffered by virtue of the bankruptcy. Accordingly, to the extent that it would allow interest on prepetition delinquent interest prior to confirmation, application of § 506(b) would produce a curious result. It is easy to find the concept of allowing post-petition interest on prepetition defaulted interest during the pendency of the case prior to confirmation, a disagreeable state of affairs.

Its indirect allowance post-confirmation under a plan, however, is a different matter. With confirmation, the debtor/creditor relationship becomes a different one, with new and permanent legally binding rights and responsibilities of the parties based upon a restructured debt. It seems not only fair and equitable, but totally in keeping with long-established ordinary and customary financial transactions and rela-

tionships, that interest should be paid on that restructured indebtedness, regardless of the nature of the debt prior to its restructure.

From review of the numerous published opinions dealing with this issue in the context of Chapter 13 cases, it appears that there are several different reasons advanced for the various positions taken regarding it. It seems that many courts (and Colliers) have taken relatively simple straight-forward statutes and tortured them with overly complex (and in some cases perverse) analysis. In this Court's opinion, the proper judicial resolution of the issue lies in the disciplined application of statutes according to what they plainly mean. While otherwise absurd results might justify interpretations deviating from the plain meaning of statutes, what are thought to be otherwise curious results do not. The latter should be left to the legislature to remedy if remedy is deemed appropriate.

Otherwise, there can only result a general state of confusion. A review of the published opinions cited above suggests that there exists a general state of confusion surrounding the matters at issue in this case. Hopefully, this opinion will not unduly add to it.

### IV.

Based on the foregoing,

IT IS HEREBY ORDERED: First Minnesota shall be paid interest on the allowed amount of its secured claim, which is $54,550.91, from the date the petition was filed pursuant to 11 U.S.C. § 1325(a)(5) and Local Rule 134(a), at the rate of 8.75 percent.