**In re Raymond August CHRISTENSEN, Debtor.**

**Bankruptcy No. 85 B 2278 G.**

United States Bankruptcy Court, D. Colorado.

Oct. 24, 1989.

Edmund G. Lambert, Lakewood, Colo., for debtor, Raymond A. Christensen.

Lisa K. Shimel, Jay M. Finesilver, Denver, Colo., for Lomas Mortgage, U.S.A.

## OPINION AND ORDER ON DEBTOR'S MOTION FOR SANCTIONS AND APPROPRIATE RELIEF CLARIFYING DEBTOR'S RIGHTS

CHARLES E. MATHESON, Chief Judge.

This matter came before the Court on the Debtor's motion seeking an order determining the rights of the parties and sanctions as against Lomas & Nettleton Company, now known as Lomas Mortgage U.S.A. ("Lomas"), the holder of the first deed of trust on the Debtor's residence. That motion was set for hearing at which time the Court received the evidence of the parties. This opinion and order enters as the result of that hearing.

This file, on the evidence received by the Court, indicates that the Debtor filed the instant Chapter 13 case on May 24, 1985. At the time of the filing the Debtor was in arrears for fourteen payments on his first mortgage loan in an aggregate sum of $5,139.68.

The Debtor's amended Chapter 13 plan proposed to cure the arrearage under the first mortgage by the making of twenty-four payments to the holder of the first mortgage (which was then First Security Services Corp.) in the aggregate amount of $5,692.08. That amount represented the arrearage capitalized at 10% over the period for payment. Regular mortgage payments in the amount of $356.00 per month were to be made outside the plan. Those payments included the monthly amortized amount of principal and interest plus an additional sum which was accumulated in a reserve account to be used by the lender to pay real property taxes and insurance. The Debtor made all plan payments and

regular payments outside the plan, and the case was duly closed on August 15, 1988.

On July 28, 1989, the Debtor filed a motion to reopen this Chapter 13 case. In that motion to reopen the Debtor alleged:

Debtor successfully completed his Chapter 13 plan. In his Plan, Debtor cured certain defaults including a default to the first mortgage holder of Debtor's residence. The successor to the first mortgage holder has failed and refused to recognize such cure of default and has declared its intention to foreclose upon Debtor's residence. Debtor is current in his payments and has totally cured his previous default pursuant to his Amended Chapter 13 Plan and the Bankruptcy Code.

This case was then reopened in order to permit the Debtor to file the motion giving rise to this opinion.

The evidence received at the hearing established that the Debtor had in fact made all Chapter 13 plan payments and had made regular payments outside the plan. The lender, however, asserts that the Debtor is in default and owes, as of June 1989, the total of $5,433.16 to cure. That amount includes:

(1) eight payments $ $387.00— $ 3,096.00
(2) late charges— $ 602.06
(3) attorneys fees and costs— $ 1,875.00
(4) suspense credit <minus>— $<139.90>

The hearing held by the Court on the Debtor's motion was conducted for the purpose of attempting to decipher this curious state of affairs. How could this Debtor, who had proposed in his plan to cure all defaults in an amount agreed to by the lender and who has made all of his payments to the trustee and to the lender, be so much in arrears? The evidence received at the hearing discloses that the answer to this question is deceptively simple and points out a very fundamental misconception by the lender in this case concerning how chapter 13 cases work and the proper way to account for cure payments.

The Debtor's problem with the lender actually arose late in 1986 when the loan was sold to Lomas. At that time Lomas did a review of the Debtor's reserve account for taxes and insurance and found that a deficiency existed in that account. In order to correct that deficiency and to provide sufficient funds to pay accumulating taxes and insurance, the Debtor was notified that his monthly payments were being increased from $358.00 a month to $727.00 a month. Needless to say, the increase in monthly payments of that magnitude was a significant shock to the Debtor. He attempted to find out why there would be such an increase. In the meantime, he continued to pay the monthly payments of $358.00 per month.

The policy of Lomas was to not give credit to the borrower for partial monthly payments. Instead, the payments, as received, were held in a suspense account until enough was accumulated to make the full mortgage payment. It took the Debtor three monthly payments at $358.00 a month to accumulate enough in the suspense account to make a full payment of $727.00. Thus, the Debtor was immediately in arrears and was being charged late charges for the payments that were not being made. Ultimately, Lomas sought to declare a default and to foreclose the underlying deed of trust which is what prompted the Debtor to return to this Court. Of course, in the interim, the account had been referred to attorneys for Lomas for foreclosure, and attorneys' fees and foreclosure costs have now also accrued.

The problem arises because of the failure of Lomas to recognize the purpose and effect of the cure provisions under the Chapter 13 plan. Pursuant to 11 U.S.C. § 1322(b)(5), the debtor is allowed to cure his prepetition defaults under his plan. That cure could, theoretically at least, be made by a lump sum payment on the effective date of the plan. In the alternative, since debtors rarely have the monies available to effect a lump sum cure, the debtors can effect a cure by making periodic payments under the plan. If the debtor elects to cure by periodic payments, which this Debtor did, then the debtor must also compensate the lender for the delay in payment. *In re Trigwell,* 67 B.R. 808 (Bankr. C.D.Ca.1986). That is done by using an

interest factor (here 10%). The resulting capitalized amount to be paid under the plan is to have a present value as of the effective date of the plan equal to the cash cure amount. 11 U.S.C. § 1325(a)(5)(B); *In re Trigwell, supra.* In other words, if a properly capitalized cure figure is utilized, on the effective date of the plan the lender receives value in the amount of the cure figure just as if the default had then been fully paid and cured by cash payment.

Lomas never recognized this fundamental principle. As a result, in late 1986 when Lomas made its review of the status of the escrow account, it went back to the date the Debtor's loan account had last been current, which was in 1983. Lomas then brought the escrow account forward, giving credit for payments made, charging for authorized disbursements, and estimating requirements for the coming year. Having done so, Lomas found that there was a substantial deficiency which had to be covered in the escrow account. It elected to provide for that deficiency by increasing the Debtor's monthly payments from $358.00 a month to $727.00.

Lomas' actions were improper. The fault was in commencing the analysis of the escrow account as of 1983 when the loan was last current. Between that date and May of 1985, when the Chapter 13 was filed, the Debtor missed fourteen monthly payments. As a result, as of the date of filing the Debtor had a substantial accumulated deficit in the escrow account. Lomas, in its analysis of the escrow account, carried that accumulated deficit forward and sought to extract payments of that amount by increasing the monthly mortgage payments to $727.00. BUT THIS ANALYSIS IGNORES THE FACT THAT THE ESCROW DEFICIENCY WHICH EXISTED ON THE DATE OF THE FILING OF THE CHAPTER 13 WAS BEING CURED UN-

DER THE PLAN. Because the cure figure included interest the value to Lomas was the same as if the full amount of the deficiency had been paid in cash on the effective date of the plan. It was, therefore, improper for Lomas to include a purported deficiency as of May, 1985 in determining the escrow status in December, 1986. Instead, the status of the escrow account should have been determined by assuming that all fourteen defaulted prepetition payments had been timely made.

The action of Lomas in seeking collection of the prepetition deficiency by increasing the loan payments to $727.00 a month was an act to recover a claim against the Debtor which arose before the commencement of the case. Such an act violates the provisions of 11 U.S.C. § 362(a)(6). *Mellon Financial Services v. Broman,* 82 B.R. 581 (Bankr.D.Colo.1988). As described above, that act led to other problems including, now, the assertion that the Debtor is eight payments behind and the threat of foreclosure. The result has been that the Debtor has been required to hire counsel and seek the protection of this Court in order to assert the rights which properly accrued to him under his Chapter 13 plan.

It is appropriate that sanctions be imposed. Certainly the Debtor should not have to bear the expense of his attorney in attempting to resolve the problem erroneously caused by Lomas. Also, the Debtor's loan account must be restated to eliminate the late charges and unjustified attorney's fees charged by Lomas in its attempt to foreclose when the Debtor was not in default.[1]

The restatement of the Debtor's account, as mandated by and in accordance with the terms of this opinion, is a mechanical task of no great difficulty, and the parties ought to be able to resolve that issue between them. If not, further hearings can be con-

---

1. There is another evil that could be lurking in these cases but is, in fact, not present here. According to the testimony of Lomas, late payments, when received, are credited back to the oldest outstanding payment date. In other words, except for the imposition of late charges, a late payment does not result in continuing accumulating interest charges. This is so, the Court is advised, because of government regulations pertaining to this particular loan. Such would not necessarily always be the case and it would be possible for debtors to be double-dipped in interest charges if they both pay interest on the cure amount and have interest continue to accumulate on the loan from the date of the oldest default.

ducted. In order to bring the matter to conclusion and to determine the dollar amount of sanctions properly imposed or imposable,

IT IS ORDERED that within thirty (30) days from date of the entry of this opinion, Lomas will recalculate Debtor's loan account pursuant to the requirements of this opinion, giving proper credit to the monthly payments when made, and serve a copy thereof on Debtor and Debtor's counsel and file a statement with the Court. The Debtor will have twenty (20) days to review such restated loan account and to file with the Court any objections which the parties are unable to resolve; and

IT IS FURTHER ORDERED that Debtor's counsel shall file with the Court and serve on counsel for Lomas a fee application disclosing the time and charges incurred on behalf of the Debtor for which the Debtor claims a right to reimbursement from Lomas and such other claims for damages as the Debtor deems appropriate as compensation for Lomas's violation of the stay herein. Lomas will have twenty (20) days after date of service of such statement to respond. The matter will then be set for such further hearings as the Court considers appropriate.