**In the Matter of Scott Alan STRATTON, Debtor.**

**Bankruptcy No. HK 82 00187.**

United States Bankruptcy Court W.D. Michigan.

May 4, 1983.

Paul Davidoff, Kalamazoo, Mich., for debtor.

Steven Rayman, Kalamazoo, Mich., for First Federal Sav. and Loan Ass'n.

OPINION

OBJECTION TO CLAIM—§ 1322(b)(2)—§ 1325(a)(5) TREATMENT OF MORTGAGE ARREARAGE ON DEBTOR'S PRINCIPAL RESIDENCE

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the court on debtor's objection to a claim filed by First Federal Savings & Loan. The debtor, Scott Alan Stratton, and his wife have a mortgage on their principal residence with First Federal. The mortgage note provides for interest at the rate of 9% per annum and monthly payments of $174. Several payments were missed, and the debtor filed a Chapter 13 petition on January 22, 1982. First Federal has filed an amended proof of claim in the amount of $2,115.93 for mortgage arrearages. This sum includes principal and interest, tax escrow and late charges. First Federal requests interest at

the rate of 14% on this arrearage. The debtor, while not objecting to the amount of the claim, objects to the higher interest rate, and to the alleged "interest on interest." The matter was argued before this court, and briefs were submitted.

First Federal relies on § 1325(a)(5) of the Bankruptcy Code for their right to receive an interest rate higher than that provided for in the mortgage note. That section provides, in part, that the court shall confirm a plan if:

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . .

The Sixth Circuit has recently analyzed the general treatment of a secured claim under this section of the Code. In *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982), the Court set forth the procedure to follow in treating a secured claim, and addressed the issue of what interest rate should be applied. The Court stated that since the law requires a creditor to make, in effect, a new loan in the amount of the collateral, the interest rate used should be the current market rate for similar loans. *Supra,* at 431. However, the Court went on to note that "special circumstances" may justify deviating from the current market rate. *Supra,* at 431.

The debtor points to § 1322(b)(2) for authority that First Federal cannot modify the interest rate on its arrearage. That section provides that a plan may:

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

■ After reviewing the sections involved, I conclude that First Federal is limited to their contract interest rate on any

arrearage. Sec. 1322(b)(2) controls the interest to be charged on a claim secured, as herein, only by the debtor's principal residence.

■ When the Bankruptcy Reform Act was passed, mortgages on debtors' principal residences were singled out for special treatment. Section 1322(b)(2) specifically says that the rights of these mortgage holders cannot be modified. Therefore, a debtor cannot "cram down" a different valuation as he can with other types of secured claims. The claim must be paid in full as a secured claim. The debtor does have the right to cure a default by maintaining regular payments and paying off the arrearage in a reasonable time, but this right does not go so far as to permit a reduction in payments or a change in interest rates. *See, In re Taddeo,* 685 F.2d 24 (2d Cir.1982).

■ The gist of First Federal's argument is that where the mortgage rate is lower than current market rates, they should be entitled to modify the rate up to achieve "present value" on the arrearage under § 1325(a)(5). They would further argue that if the mortgage rate is higher than current market rates, the arrearage could not be treated with a lower interest factor since that would be an improper modification of their rights under § 1322(b)(2). This argument, however, cannot be supported by such a strained interpretation of § 1322(b)(2). That section prohibits modification of a mortgage holders rights, whether the modification is to the creditor's advantage or to its detriment.

The bankruptcy court in *In re Neal,* 10 B.R. 535 (Bkrtcy.S.D.Ohio 1981), extensively analyzed this issue and reached the opposite conclusion. That court held that despite § 1322(b)(2), a Chapter 13 debtor could vary the length of a mortgage, and change the interest rate. Support for this view was found in Congress's intent to make Chapter 13 relief available to a wide range of financially distressed debtors. The Court stated,

While a conclusion can be drawn that Congress intended to treat specially the rights of a creditor secured only by an interest in residential real estate of the debtor, where a blind application of a

clause or word in the statute would result in an undermining of the ability of debtors to effectively use the Chapter 13 remedy, the Court should allow the basic statutory scheme to prevail. *United States v. American Trucking Association, Inc.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

*Supra,* at 539.

 The *Neal* court's interpretation of § 1322(b)(2) of the Code renders that section virtually devoid meaning. It is certainly a modification of mortgagee's rights if a debtor can change the length of the obligation, and change the interest rate. Because I believe the Code is not to be interpreted in such a way that a subsection is meaningless, I reject the analysis of the *Neal* court. Accordingly, I find that a creditor, secured only by a security interest in the debtor's principal residence, is limited to the contract rate of interest on his claim regardless of whether that rate is higher or lower than the current market rate for similar type loans.[1]

The final issue that needs to be addressed is the allocation of payments on First Federal's claim. Many of the debtor's contentions were resolved by the Sixth Circuit in *Memphis Bank & Trust, supra,* and a detailed analysis is not appropriate now. First Federal's amended claim accurately sets forth the correct treatment. Under that treatment, principal payments of $20,947.65 will be made outside the plan. This sum includes a reduction in principal for payments that should have been made but were not. The arrearage claim is $2,115.93. This amount is the total missed payments, and is comprised of $94.98 in principal, $928.47 in interest, and escrow deficiency totaling $1,211.13.[2] Late charges, as provided for in the mortgage, are included pursuant to § 506(b).

The total arrearage claim of $2,115.93 shall bear interest at the contract rate with arrearage payments to be made through the plan. This is not an impermissible compounding of interest on interest as the debtor urges. If absent bankruptcy the $2,115.93 was added to the principal. First Federal would be entitled to interest on the entire balance. Michigan law expressly authorizes the accrual of interest on unpaid installment payments, MSA § 19.21 [M.C.L.A. § 438.101]. Further, interest is required here under § 1325(a)(5)(B) of the Bankruptcy Code to give the creditor the present value of his money. Accordingly, the amended claim of First Federal Savings and Loan is allowed as filed, except interest shall be paid on the arrearage at the contract rate.

---

1. Had the mortgage provided for a higher interest rate upon default, that rate would be the proper one to be applied to an arrearage in a Chapter 13 plan. The mortgage here did not contain such a provision. Instead, the mortgage provided for penalty of 4% of the missed payments to be added as a late charge. Those amounts are properly included in the claim pursuant to § 506(b) of the Bankruptcy Code.

2. The court does not know whether the creditor has advanced funds to pay the taxes or insurance for which the escrow fund was established. Therefore, there may be an additional issue of whether this portion of the arrearage should draw interest. The debtor will have 30 days after entry of this order to request further hearing on this issue only.