**In re Thomas & Kathleen STAMPER, Debtor.**

**Bankruptcy No. 87 B 14915.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 13, 1988.

Bennett Kahn, Chicago, Ill., for debtors.

Laura Wardinski, Codilis & Assoc., Oakbrook Terrace, Ill., for Com. Mortg.

## MEMORANDUM AND OPINION

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes to be heard on the debtors' objection to a portion of the ar-

rears claim filed by Commonwealth Mortgage Company ("Commonwealth") in the debtors' Chapter 13 case. Commonwealth's claim includes interest on arrearages. The debtors contend that the agreement between the parties does not provide for interest on arrearages and that requiring the payment of such interest would violate 11 U.S.C. § 1322(b)(2). Commonwealth argues that both 11 U.S.C. § 1325(a)(5)(B)(ii) and the mortgage contract itself require the payment of interest.

## FACTS

Thomas and Kathleen Stamper, (the "debtors"), are the owners of a single family home which they use as their principal residence. The home is subject to a first mortgage in favor of Commonwealth. The debtors encountered financial difficulties, fell behind on their mortgage payments, and on October 13, 1987 the debtors filed a Chapter 13 petition. The debtors' Chapter 13 plan was approved by this Court on December 10, 1987. It provided, *inter alia*, for the payment of the prepetition mortgage arrears, without interest on the arrears, plus current mortgage payments to Commonwealth. Commonwealth filed a claim for mortgage arrears which included an amount labeled "discount to present value" in the amount of $923. The $923 is, of course, simply interest on the mortgage arrears. On December 2, the debtors filed an objection to Commonwealth's claim for interest on the arrears. The parties agree that there are no issues of fact and have submitted the dispute to the Court on briefs.

## DISCUSSION

The issue presented in this case is whether Commonwealth, whose claim against the debtor is secured only by a security interest in the debtors' principal residence, is entitled to receive interest on prepetition arrearages either on account of language in its mortgage agreement with these debtors or as a matter of law.[1] For the following reasons, this Court holds that Commonwealth is not entitled to interest on arrearages either based on the language of the agreement or as a matter of law under 11 U.S.C. § 1325(a)(5)(B)(ii).

### I

### *Commonwealth's Mortgage Contract Does Not Provide For Interest On Arrears*

Commonwealth contends that the terms of its mortgage agreement with these debtors require the payment of interest on arrears in a cure situation such as that effected by the debtors' Chapter 13 plan. The mortgage contract provides:

> "... in case of any other suit, or legal proceeding, wherein the Mortgagee shall be made a party thereto by reason of this mortgage, its costs and expenses, and the reasonable fees and charges of the attorneys or solicitors of the Mortgagee, shall be a further lien and charge upon the said premises ..."

Commonwealth argues that because the default in question is to be cured over time, it is incurring an additional carrying "expense". As Commonwealth sees it, the interest on the arrears is one of the "expenses" the clause in question entitles it to recover as part of its costs of collection. This Court does not agree.

The clause upon which Commonwealth rests its claim for interest refers to "costs and expenses" related to any legal proceeding. No mention is made of interest on arrears. Expense is defined as "[t]hat which is expended, laid out or consumed". Black's Law Dictionary 518 (5th ed. 1979). Applying this definition of "expense" to the mortgage contract, the Court concludes that the loss of the use of the arrears due during the cure period does not constitute an additional "expense" to Commonwealth within the meaning of the mortgage clause. Instead, the clause clearly refers to legal expenses incurred in connection with legal proceedings under the mortgage. Interest on the arrears is clearly not a recoverable legal expense. Instead, it is an additional claim against the debtors on the loan.

---

1. This is, of course, a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (K) and (L).

The language of the contract is unambiguous. The right to interest on arrears is not mentioned in the contract in *haec verba*. Under Illinois law, where a contract is plain and unambiguous, a court must enforce the contract as written and not attempt to read into it by construction any covenant not expressed therein. *Anheuser–Busch Brewing Ass'n v. Kalthoff*, 189 Ill.App. 38 (1914). Assuming arguendo that the contract is ambiguous, it is a well established principle of contract law that the instrument is to be strictly construed against the drafter. *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 208 N.E.2d 12 (1965).

Commonwealth, as drafter of the contract, had it wanted (or even thought of) the right to interest on the arrearages in the event of an installment cure of a default in payment (in or out of bankruptcy) could have simply included language in the contract specifically providing for such. It would have been a simple clause to draft. Had the contract so provided this Court would have been required to give that provision effect, pursuant to 11 U.S.C. § 1322(b)(2). *In re Terry*, 780 F.2d 894, 897 (11th Cir.1986). Commonwealth's failure to specify a right to interest on arrears indicates that the parties to the mortgage agreement did not intend that interest on arrears was required. Whether the omission was by oversight or intentional is irrelevant. This Court will not rewrite the mortgage to give the lender more rights than provided in the bargain between Commonwealth and these debtors.

## II

*Section 1325(a)(5)(B)(ii) of the Bankruptcy Code Is Inapplicable To Residential Mortgages*

Commonwealth's fallback position is that even if its contract is insufficient to give it interest on the arrears, it is entitled to such as a matter of law under 11 U.S.C. § 1325(a)(5)(B)(ii). Section 1325(a)(5)(B)(ii) provides,

(a) [T]he court shall confirm a plan if ...

(5) with respect to each allowed secured claim provided for by the plan.

(B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;....[2]

Commonwealth contends that 11 U.S.C. § 1325(a)(5)(B)(ii) requires the payment of interest on mortgage arrears in order to give it the present value of its money. *See In re Nesmith*, 57 B.R. 348 (Bankr.E.D.Pa. 1986). Commonwealth argues that "[a] plan that pays a secured claim over time must provide an amount in excess of the dollar amount of the claim in order to compensate the creditor for not recovering the full value of its claim immediately." This proposition is not without support.[3]

The debtors counter that the problem with Commonwealth's argument is that it overlooks another provision of the Bankruptcy Code, 11 U.S.C. § 1322(b)(2), which must be read together with 11 U.S.C. § 1325(a)(5)(B)(ii). Section 1322(b)(2) of the Bankruptcy Code provides in pertinent part that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." However, paragraph (5) of § 1322(b) modifies paragraph (2) by stating: "notwithstanding paragraph (2) ... [the plan may] provide for the curing of any default within a reasonable time...."

Thus, "[r]esidential mortgage lenders receive unique treatment in the Bankruptcy Code." *In re Terry*, 780 F.2d 894, 896 (11th Cir.1985). The Bankruptcy Code provides only one instance in which a Chapter 13 plan may alter the mortgage contract between the debtor and the principal residence mortgagee. That right arises when the debtor defaults, the contract permits the lender to accelerate the debt and the

---

**2.** 11 U.S.C. § 1325(a)(5)(B)(ii).

**3.** *See, e.g., In re Spader,* 66 B.R. 618 (W.D.Mo. 1986); *In re Venech,* 67 B.R. 56 (Bankr.M.D.Fla. 1986); *In re Wilkinson,* 33 B.R. 933 (Bankr.S.D.

N.Y.1983); *In re Stratton,* 30 B.R. 44 (Bankr.W. D.Mich.1983); *In re Webb,* 29 B.R. 280 (Bankr. E.D.N.Y.1983).

lender has accelerated the loan prepetition. In such a case, the Chapter 13 plan may modify the contract so as to deaccelerate and reinstate the original installment payments. *See, e.g., In re Clark*, 738 F.2d 869, 872 (7th Cir.1984) ("De-acceleration ... is not a form of modification banned by (b)(2) but rather is permissible and necessary concomitant of the power to cure defaults.").

Section 1325(a)(5)(B)(ii) of the Bankruptcy Code, on the other hand, clearly is intended for the benefit of secured creditors whose rights have been modified by a Chapter 13 plan. In such a case, a creditor is entitled to receive an additional amount for the time value of money. *See Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). Section 1325(a)(5)(B)(ii) of the Bankruptcy Code has no application to a creditor whose only security is the debtor's home because it is also clear that under 11 U.S.C. § 1322(b)(2) the contractual rights of the principal residence mortgagee may not be modified involuntarily by a Chapter 13 plan. However, the debtor can force even the home mortgagee to accept a cure. Because the Bankruptcy Code permits an involuntary deacceleration and cure, the mortgagee's rights are not modified by such. *In re Capps*, 836 F.2d 773 (3d Cir.1987); *In re Clark*, 738 F.2d 869 (7th Cir.1984). Instead, the effect of the "cure" is to place the parties in their respective positions prior to the default. The contract terms remain in force other than for the right to accelerated payments, and the mortgagee will receive all of the interest, charges, and costs to which it is entitled under the contract. 5 *Collier on Bankruptcy* ¶ 1322.09[4] (15th ed. 1988). Because the cure does not work a modification of the mortgagee's rights, "[t]he time value of money is irrelevant", *In re Simpkins*, 16 B.R. 956, 965 (Bankr.E.D.Tenn. 1982), unless the contract specifically provides for interest on the arrears in the event of a cure. *See In re Capps*, 836 F.2d 773 (3d Cir.1987). In fact, under this analysis, to require a Chapter 13 debtor to pay interest on the arrears when the home mortgage agreement does not provide for such would be an impermissible modifica-

tion of that home mortgage under 11 U.S. C. § 1322(b)(2). After all, nothing in 11 U.S.C. § 1322(b)(2) permits alterations in a home mortgage agreement which are detrimental to the debtor. All involuntary modifications are prohibited regardless of whether they would benefit the debtor or lender. If 11 U.S.C. § 1325(a)(5)(B)(ii) is read to require interest payments on arrears as a matter of law, it would conflict with 11 U.S.C. § 1322(b)(2). *See In re Terry*, 780 F.2d 894, 896–897 (11th Cir.1986).

The Courts of Appeals have split on the question of whether the full compensation approach of 11 U.S.C. § 1325(a)(5)(B)(ii) requires payment of interest on the arrears as a matter of law or whether the nonmodification approach of 11 U.S.C. § 1322(b)(2) prohibits such payments in the absence of a provision in the home mortgage agreement providing for such. The Sixth Circuit, in *In re Colegrove*, 771 F.2d 119 (6th Cir. 1985), held that requiring interest payments on mortgage arrears is not a modification of the home mortgage contract, even if that contract does not provide for such. The court found the interest requirement merely incidental to the "cure", which is excepted from the nonmodification rule by 11 U.S.C. § 1322(b)(5). The court reasoned that because it had previously held that an unsecured creditor was entitled to interest under a Chapter 13 plan, it would be incongruous to deny interest to a secured creditor in a cure situation. The court then fixed the interest at the prevailing market rate, limited by the contract rate of interest.

Judge Celebrezze, in dissent, questioned the majority's interpretation of 11 U.S.C. § 1322(b). Judge Celebrezze's criticism was twofold. First, he argued that the mortgage agreement should determine what is required to cure a default for purposes of 11 U.S.C. § 1322(b)(5). The dissent reasoned that unless the agreement clearly provides for interest on arrears, requiring the payment of interest represents a modification of the mortgage contract that is prohibited by 11 U.S.C. § 1322(b)(1). Second, the dissent found the majority's reasoning inconsistent. The dis-

sent noted that the majority looked to the mortgage agreement to fix the limit on the interest rate, but ignored the agreement for the purpose of determining whether interest should be paid at all.

The Court of Appeals of the Eleventh Circuit adopted the *Colegrove* dissent's view in *In re Terry*, 780 F.2d 894 (11th Cir.1986). The *Terry* Court held that a secured creditor who holds a security interest in the debtor's principal residence is not entitled to receive interest on arrearages unless provided by the mortgage contract. The court reasoned that the allowance of interest under 11 U.S.C. § 1325(a)(5)(B)(ii) would constitute a modification of the mortgage contract, which is prohibited under 11 U.S.C. § 1322(b)(2). Moreover, the court found 11 U.S.C. § 1325(a)(5)(B)(ii) inapplicable to residential mortgages.

The *Terry* reasoning was recently adopted by the Third Circuit in *In re Capps*, 836 F.2d 773 (3d Cir.1987). Once again, in *Capps* the court had before it the issue of whether 11 U.S.C. § 1325(a)(5)(B)(ii) of the Bankruptcy Code requires a Chapter 13 debtor curing a home mortgage default to pay interest on the mortgage arrearages, even though the mortgage contract does not provide for such payments. The court held that the Bankruptcy Code does not require interest on arrearages, as a matter of law. The Third Circuit viewed 11 U.S.C. § 1325(a)(5)(B)(ii) as applying only in the context where a creditor's rights have been modified. However, the court reasoned that because a cure is not a modification of a creditor's rights, 11 U.S.C. § 1325(a)(5)(B)(ii) is inapplicable. Accordingly, the court concluded that the present value requirement of 11 U.S.C. § 1325(a) does not apply when a default is cured pursuant to 11 U.S.C. § 1322(b)(5).

This Court finds the reasoning of *Terry, Capps,* and the dissent in *Colegrove* to be persuasive. Section 1325(a)(5)(B)(ii) of the Bankruptcy Code is intended to require present value payments only to those creditors whose secured claims have been modified by the Chapter 13 plan. Section 1325(a)(5)(B)(ii) of the Bankruptcy Code ensures such a secured creditor the present value of its collateral in order to mitigate the effects of an 11 U.S.C. § 1325(a) cramdown. *Capps* at 776. This is necessary because a cramdown allows a debtor to modify the rights of a secured creditor by reducing payments or otherwise. 5 *Collier on Bankruptcy* ¶ 1322.09[4] (15th ed. 1988).

However, 11 U.S.C. § 1325(a)(5)(B)(ii) applies only if the rights of the secured creditor are modified by the plan. Under 11 U.S.C. § 1322(b)(2), the contractual rights of a claim secured only by the debtor's principal residence may not be modified by the plan. For these purposes, however, a cure is not regarded as a modification, because except for the stay against foreclosure, the contract terms remain in force. 11 U.S.C. § 1322(b)(5); *Capps, supra; Clark supra.* Accordingly, the time value of money is irrelevant in connection with the cure. "The creditor receives the interest, charges and costs to which it is entitled under the contract...." 5 *Collier on Bankruptcy* ¶ 1322.09[4] (15th ed. 1988). Therefore, to require interest on arrears when the contract does not call for such would be to impermissibly modify the mortgage contract adversely to the debtor in violation of 11 U.S.C. § 1322(b)(2). If 11 U.S.C. § 1325(a)(5)(B)(ii) is read as being applicable in the context of an 11 U.S.C. § 1322(b)(5) cure, requiring interest on arrears where the mortgage contract fails to provide for such, the secured creditor would get a benefit it never bargained for. The Bankruptcy Code should not be read to provide either debtors or secured creditors with windfalls. Therefore, this Court concludes that interest on the arrears is not required by law in a Chapter 13 case. It is only required if the mortgage contract provides for it.[4]

---

4. Commonwealth also argues that failure to provide it with interest on arrears deprives it of adequate protection under the indubitable equivalent requirement of 11 U.S.C. § 361(3).

The short answer to that assertion is that 11 U.S.C. § 361 and notions of adequate protection have nothing to do with the dispute before the Court. The question before the Court is wheth-

## CONCLUSION

IT IS HEREBY ORDERED that Commonwealth is not entitled to interest on arrearages as a matter of law pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii).

IT IS FURTHER ORDERED that Commonwealth is not entitled to such payments under the mortgage contract.

IT IS FURTHER ORDERED that the debtors' objection to Commonwealth's claim for interest on the arrears is sustained.

er Commonwealth's claim for interest on arrears is allowable. The Court has held that the claim is not allowable. Once that is determined, the scope of Commonwealth's claim is defined. That claim defines the extent of Commonwealth's interest in the debtor's property. *See* 11 U.S.C. § 506(a). Obviously, Commonwealth has no interest in the property for the nonallowable claim for interest on arrears. It therefore follows that the debtor does not have to provide adequate protection for an interest the creditor does not have in the debtor's property. *See In Re Clark Tech. Associates, Ltd.,* 9 B.R. 738 (Bankr.D.Conn.1981).

In effect, the indubitable equivalent of its interest in the home on account of Commonwealth's claim to interest on the arrears is nothing. If the claim for interest on the arrears was al-

lowed, adequate protection would have been provided by requiring such payments on the Chapter 13 plan. A debtor who complies with a confirmed plan that includes a secured claim provides the holder of that secured claim with adequate protection as a matter of law. *See United States v. Reynolds,* 38 B.R. 725 (W.D.Va. 1984), *aff'd,* 764 F.2d 1004 (4th Cir.1985). In such a case, indubitable equivalence is irrelevant. This case differs from *In re American Mariner Industries Inc.,* 734 F.2d 426 (9th Cir. 1984) and the other cases relied on by Commonwealth in that the issue here is not the amount of adequate protection payments required to keep the stay in place pending confirmation of a plan, but the amount of payments required as a matter of law under a confirmed plan.