**In re Emilio J. LAGUNA, Jr., and Cynthia Laguna, Debtors.**

**SHEARSON LEHMAN MORTGAGE CORPORATION, Appellant,**

**v.**

**Emilio J. LAGUNA, Jr., and Cynthia Laguna; Lawrence J. Loheit, Trustee, Appellees.**

**BAP No. EC–88–2107–PRAs.**
**Bankruptcy No. 288–05581–A–13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 20, 1989.

Decided May 18, 1990.

Thomas J. Holthus, Costa Mesa, Cal., for appellant, Shearson Lehman Mortg. Co.

Scott DeBier, Sacramento, Cal., for appellees.

Before PERRIS, RUSSELL and ASHLAND, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

An oversecured creditor holding a security interest in debtors' primary residence, appeals from an order confirming the debtors' Chapter 13 Plan which proposed to cure pre-petition arrearages owed to appellant but which did not provide for interest on the arrearages. We AFFIRM.

## FACTS

The relevant facts are not in dispute. Emilio and Cynthia Laguna (the "debtors") own a single family dwelling which is their principal residence and which is the sole security for the debtors' obligation to appellant, Shearson Lehman Mortgage Corporation ("Shearson"). Shearson is an oversecured creditor. Debtors were six monthly payments behind on their obligation to Shearson when they filed a Chapter 13 petition on August 25, 1988.

The debtors' Chapter 13 Plan proposed to pay the current payments to Shearson and to cure the pre-petition arrearages owed to Shearson over a period not to exceed 36 months, but did not provide for interest on the arrearages. Shearson objected to confirmation on the grounds that the Plan failed to provide for interest on the arrearages that is due over the term of the Plan under 11 U.S.C. § 1325(a)(5).[1] Neither the note nor the deed of trust provided for interest on arrearages. The bankruptcy court overruled Shearson's objection and entered an order confirming the Plan on January 13, 1989. Shearson filed this timely appeal.

1. All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise indicated.

2. 11 U.S.C. Section 506(b) provides as follows: To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this sec-

## ISSUES

1. Whether an oversecured creditor, whose sole security is the debtors' principal residence, is entitled to post-petition interest on pre-petition arrearages that are cured under the debtor's Chapter 13 plan when neither the note nor the deed of trust provide for such interest.

2. Whether the Fifth Amendment requires the payment of such interest.

## STANDARD OF REVIEW

The issues on appeal are questions of law that are reviewed *de novo*. *See In re Patterson*, 86 B.R. 226, 227 (9th Cir. BAP 1988).

## DISCUSSION

1. *Whether an oversecured creditor, whose sole security is the debtors' principal residence, is entitled to post-petition interest on pre-petition arrearages that are cured under the debtor's Chapter 13 Plan when neither the note nor the deed of trust provide for such interest.*

Shearson initially contends that it is entitled to post-petition interest on the pre-petition arrears under section 506(b).[2] Section 506(b) determines the interest to be included as part of the allowed secured claim as of the date of confirmation rather than the interest to be paid on deferred payments under the Plan. *See In re Corliss*, 43 B.R. 176, 178 (Bankr.D.Or.1984). This distinction compels us to reject Shearson's argument that it should be allowed to recover post-confirmation interest on arrearages under section 506(b).

Even if section 506(b) were pertinent to post-confirmation interest, it is doubtful that it would allow interest on arrearages in the absence of a contractual provision providing for such interest. Courts have generally disallowed interest on arrearages

tion, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

under section 506(b) unless there was a contractual basis for such interest. *See, e.g., In re Gincastro,* 48 B.R. 662 (Bankr. D.R.I.1985). Shearson argues that the recent decision of *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), implicitly overruled cases disallowing interest on arrearages in the absence of a contractual basis for such interest. In holding that post-petition interest may be allowed on oversecured nonconsensual lien claims under section 506(b), the Court in *Ron Pair* determined that the right to interest under section 506(b) is not limited to those instances where a secured creditor has a contractual right to such interest. We do not believe that *Ron Pair,* however, requires the allowance of interest on contract arrearages absent an appropriate contract provision. The allowance of such interest under section 506(b) would involve applying that section twice—first to determine that arrearages are part of the unsecured claim[3] and then to determine that interest should be allowed on the arrearages. Such allowance under section 506(b) would result in the compounding of interest[4] which is inconsistent with state law unless there is a contrary agreement. *See* Cal.Civ.Code § 1916–2. Absent a clear statutory mandate, to allow an oversecured creditor interest on interest when such allowance is contrary to state law would impede the bankruptcy goals of fostering financial rehabilitation and equitable distribution among creditors.

■ Shearson relies on section 1325(a)(5) as the second prong of its argument. Under section 1325(a)(5), when a secured creditor does not accept a plan and the debtor does not surrender the collateral to the creditor, the present value of property distributed under the plan must be no less than the allowed secured claim provided for by the plan.[5] *See* 5 *Collier on Bankruptcy* ¶ 1325.06[4][b][iii] (15th ed.1988) (hereafter *"Collier"*). When the plan proposes to pay an allowed secured claim by deferred payments, present value may be provided by proposing interest payments on the allowed secured claim over the course of the payment period. *See id.* The heart of this dispute is whether sections 1322(b)(2) and (5) alter or are inconsistent with the possible allowance of such interest under section 1325(a)(5)(B)(ii).

As relevant to the issue before us, section 1322(b)(2) prohibits the modification by a Chapter 13 plan of the rights of holders of "a claim secured only by a security interest in real property that is the debtor's principal residence."[6] *See In re Seidel,* 752 F.2d 1382, 1383 (9th Cir.1985). Notwithstanding this prohibition, section

---

3. Shearson's proof of claim listed, in addition to the unpaid principal, arrearages in the amount of $5,516.31. The arrearages apparently consist of unpaid principal and interest, late charges and attorney's fees. The portion of the arrearages consisting of unpaid principal would be part of the allowed secured claim under the terms of the loan documents. The portion of the arrearages consisting of the unpaid interest, late charges and attorney's fees would be part of the allowed secured claim pursuant to section 506(b).

4. Although there is no proof in the record, the fact that the default occurred in the second year of a 30 year note, suggests that the missed payments and consequently the arrearages consist primarily of interest, which was made part of the allowed secured claim under section 506(b). Requiring the payment of interest on the arrearages would therefore result in the compounding of interest.

5. 11 U.S.C. Section 1325(a)(5) provides that a court shall confirm a Chapter 13 plan if, *inter alia,*

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to the holder.

6. 11 U.S.C. Section 1322(b)(2) provides that a Chapter 13 plan may

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

1322(b)(5) allows the plan to cure a default and maintain payments during the pendency of the Chapter 13 proceeding on any secured claim on which the last payment is due after the date on which the final payment under the Plan is due.[7] There is a split of authority on the effect of these sections on the possible entitlement to interest under these sections.

Many courts, including the Third and Eleventh Circuits, have determined that sections 1322(b)(2) and (5) prohibit the payment of interest on arrearages to a creditor holding solely a security interest in the debtor's principal residence unless the contract between the parties provides for such interest. *See, e.g., In re Appeal of Capps,* 836 F.2d 773 (3d Cir.1987); *In re Terry,* 780 F.2d 894 (11th Cir.1985); *Collier* ¶ 1322.09[4]. *Capps* reasoned that curing a default pursuant to section 1322(b)(5) was not a modification of the secured creditors rights in that the terms of the contract, with the exception of the injunction against foreclosure, remained in force. 836 F.2d at 776. Accordingly, the court determined that the present value test of section 1325(a)(5) was not applicable where a default is cured under section 1322(b)(5) because section 1325(a)(5) applies only to compensate secured creditors whose rights have been modified. *See also Collier* ¶ 1322.09[4]; *In re Stamper,* 84 B.R. 519 (Bankr.N.D.Ill.1988).

*Terry* determined that the payment of interest on arrearages under section 1325(a)(5) constitutes a modification that is prohibited by section 1322(b)(2) when the contract between the parties did not provide for such interest. 780 F.2d at 896–97. *See In re Brown,* 91 B.R. 19, 22 (Bankr.E. D.Va.1988); *Stamper,* 84 B.R. at 523. *Terry* further noted, similar to *Capps,* that section 1325(a)(5)(B) is intended to benefit those creditors whose rights may be modified and has no application in light of section 1322(b). 780 F.2d at 896–97.

Other courts, including the Sixth Circuit, have held that the payment of interest on arrearages is permissible under section 1325(a)(5) and is not barred by sections 1322(b)(2) and (5), notwithstanding the fact that the contract between the parties does not provide for such interest. *See, e.g., In re Colegrove,* 771 F.2d 119, 122 (6th Cir. 1985). *Colegrove* determined that interest is allowable under sections 506(b) and 1325(a)(5) and such interest is "merely incident to the 'cure'" of section 1322(b)(5) rather than an impermissible modification of the loan agreement. 771 F.2d at 122. *In re Catlin,* 81 B.R. 522, 524–25 (Bankr.D. Minn.1987), in reaching the same result as *Colegrove,* determined that although sections 1322(b)(2) and (5) limit the extent to which the rights of certain secured creditors can be impaired under the Plan, they do not limit the rights and benefits conferred elsewhere in the Code (for example, sections 506(b) and 1325(a)(5)). *Catlin* further noted that sections 1325(a)(5) and 1322(b)(2) serve different but complementary purposes and are not inconsistent or contradictory. *Id. In re Trigwell,* 67 B.R. 808, 810 (Bankr.C.D.Cal.1986), agreed that sections 1325(a)(5)(B) and 1322(b)(2) and (5) were not inconsistent and indicated that it does not make sense for section 1322(b)(2), which benefits the home mortgage lender, to be used to single out and discriminate against that lender as the only class of secured creditor who is unable to receive interest on arrearages under a secured debt. *Id.*

We believe that the authorities determining that the payment of interest on arrearages is not required in the absence of a contract providing for such interest are persuasive and consistent with pertinent Ninth Circuit authority. Section 1322(b)(2) prohibits the modification of the rights of creditors holding a security interest solely in the debtor's principal residence. Section 1322(b)(5) creates an exception to this prohibition by allowing the debtor to cure a

---

7. Section 1322(b)(5) provides as follows:
    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any

unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

default within a reasonable time and maintain payments on the secured debt. Requiring post-confirmation interest to be paid on interest under either section 506(b) or 1325(a)(5)(B) absent a contractual provision providing a right to such interest would constitute a prohibited modification as it would alter the rights and expectations of the parties under their contract. This modification is not, as is suggested by *Colegrove* merely incident to the cure because the steps necessary to cure are defined by the contract and applicable non-bankruptcy law. *See Collier* ¶ 1322.09[4]. In this case, neither the contract, nor applicable non-bankruptcy law requires interest to effect a cure. *See* Cal.Civil Code § 2924c(a).

The Court of Appeals for the Ninth Circuit has dealt with the concept of "cure" without modification of the underlying claim in the Chapter 11 setting. *In re Entz–White Lumber and Supply, Inc.,* 850 F.2d 1338, 1340 (9th Cir.1988) (quoting *In re Taddeo,* 685 F.2d 24, 26–27 (2d Cir. 1982)) explained the concept of "cure" as follows:

> A default is an event which triggers certain consequences. Curing a default commonly means taking care of the triggering event and returning to predefault conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code.

Thus, cure means to restore the status quo which existed before the default. *Id.* Requiring the debtor to perform obligations which were triggered only by a default, such as requiring the payment of a post-default rate of interest, is inconsistent with the concept of "cure" and would completely eliminate the benefits of a cure as it would fail to nullify a significant consequence of default. *In re Southeast Co.,* 868 F.2d 335, 339 (9th Cir.1989); *see Entz–White,* 850 F.2d at 1343. Similarly, in this case, allowing the payment of interest on interest, which would be inherent in paying interest on arrearages, would go beyond restoring the *status quo ante*, would eliminate the benefit of cure and would fail to nullify a consequence of the default. The

allowance of such interest, therefore, would not be incident to the cure.

We are also persuaded by the reasoning of *Capps* that 1325(a)(5)(B) is not applicable when there is maintenance and cure under section 1322(b)(5) because there is no modification of the secured creditors' rights. Similar to a determination that a cure under section 1322(b)(5) does not modify creditor's rights, a claim is considered unimpaired under Chapter 11 if the plan, *inter alia,* cures pre-petition defaults and reinstates the debt. *See* section 1124(2); *see also Southeast Co., supra.* A Chapter 11 plan need not be crammed down on creditors who are not impaired by the plan. *See* sections 1129(a)(8)(B) and 1129(b)(1). By way of analogy to Chapter 11, the cram down provisions of section 1325(a)(5)(B) are not applicable when the debtor utilizes section 1322(b)(5) to cure defaults and maintain payments.

Shearson argues that section 1322(b)(2) merely prohibits the modification of the rights of a holder of a claim secured by the debtor's principal residence and that conferring a benefit on the holder through the allowance of interest is not a modification of its rights. This contention is not well taken. By its terms, section 1322(b)(2) prohibits the modification of a mortgage holders rights, whether the modification is to its benefit or detriment. *In re Stratton,* 30 B.R. 44, 45 (Bankr.W.D.Mich.1983). An example will illustrate the weakness of Shearson's contention in this regard. Suppose the contract provided for interest on arrearages at the rate of 10% and the proper interest rate for interest under section 1325(a)(5)(B)(ii) is the prevailing market rate. Under Shearson's argument, if the market rate is higher than 10% it would be allowed to recover the higher rate as a permissible modification. If, however, the market rate is less than 10% an adjustment to the market rate would be an impermissible modification. Carrying the analogy to its next logical step, under Shearson's argument there would be no reason why it would not be entitled to a market interest rate on its entire claim since such a rate reflects present value. Congress did not intend that debtors be required to pay the

higher of the market interest rate or the contract rate on claims secured solely by their principal residence. *See In re Brady*, 86 B.R. 166, 170 (Bankr.D.Minn.1988). Such payment would be at odds with section 1322(b)(2)'s bar to modifying the rights of certain secured creditors.

In summary, we believe that the cases denying the right to interest on pre-petition arrearages in the absence of a contract providing for such interest are more persuasive and are consistent with Ninth Circuit authority explaining the concept of "cure." Sections 1322(b)(2) and (5) detail the treatment to be afforded to the holders of claims secured only by the debtors' personal residence. This treatment does not include interest on pre-petition arrearages unless the contract between the parties so provides. The possible allowance of such interest under sections 1325(a)(5) and 506(b) is inconsistent with the treatment afforded by sections 1322(b)(2) and (5) as it would be an impermissible modification of contractual rights.

2. *Whether the Fifth Amendment requires the payment of such interest.*

■ Shearson also argues, relying on *In re Metz*, 67 B.R. 462, 467 (9th Cir.BAP 1986), *aff'd*, 820 F.2d 1495 (9th Cir.1987), that a failure to pay interest on pre-petition arrearages would violate the Just Compensation clause of the Fifth Amendment to the Constitution. *Metz* determined that a mortgagee's ability to accelerate a note for nonpayment was not a vested right protected by the Just Compensation clause and therefore the cure and reinstatement of the note at the original interest rate was not an unconstitutional taking where Plan provided for maintenance of payments and repayment of arrearages with interest.

Basically, *Metz* determined that the primary modification that was allowed by sections 1322(b)(2) and (5)—the cure and reinstatement—was not unconstitutional. Aside from that modification, if interest is not allowed under sections 506(b) or 1325(a)(5), the parties are left with the rights provided for by their contract. Because the contractual rights remain in

place, with the exception of the cure and reinstatement, we do not see how an unconstitutional taking could occur. In addition, although the plan in Metz provided for interest on the arrearages, the Panel did not indicate that such interest was required to avoid a constitutional infirmity.

Even if Shearson's rights as a secured creditor are somehow impaired by the failure to pay interest, courts have uniformly held that the impairment, or even the avoidance, of a secured creditors rights by the Bankruptcy Code does not constitute an unconstitutional taking under the Fifth Amendment when the security interest arose after the enactment of the Code. *See, e.g., In re Thompson*, 82 B.R. 985, 988–89 (Bankr.W.D.Wisc.1988) (application of the lien avoidance provisions of section 522(f) is not an unconstitutional taking when the security interest arose after the enactment of the Code); *compare United States v. Security Industrial Bank*, 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982) (there is substantial doubt whether the application of the lien avoidance provisions of section 522(f) to a lien arising before the enactment of the Code comports with the Fifth Amendment). In this case, Shearson's security interest was created after the enactment of the Code and any impairment of Shearson's rights inherent in denying interest on pre-petition arrearages pursuant to the Code is constitutional.

## CONCLUSION

We determine that an oversecured secured creditor, who holds a security interest solely in the debtors' principal residence, is not entitled to post-petition interest on pre-petition arrearages that are cured under the debtor's Chapter 13 plan when neither the note nor the deed of trust provide for such interest. We also determine that the Fifth Amendment does not require the payment of such interest. Because we determine that there is no right to interest we do not address the appropriate rate of interest. For these reasons, we AFFIRM.

RUSSELL, Bankruptcy Judge, dissenting:

I dissent. Payment of interest on arrearages is required in a Chapter 13 case when the arrearages are not paid in full as of the effective date of the plan. 11 U.S.C. § 1325(a)(5)(B)(ii). A plan cannot be confirmed if it provides otherwise.

Whether this mortgage provides for the payment of interest on arrearages is irrelevant because the requirement that such payment be made exists independent of any contract provision. The obligation to pay interest on arrearages is a statutory requirement contained in Section 1325(a)(5)(B)(ii), which provides that a mortgagee must receive the present value of its claim,[1] if the claim is not paid in full. The right to interest created by Section 1325(a)(5)(B)(ii), like the right to interest under Section 506(b),[2] is not conditioned on the existence of a right to interest under the contract or under applicable bankruptcy law.

The majority makes unwarranted assumptions that most of the arrearages are interest and apparently that there is something evil about compounding interest. However, we are dealing here only with the interest on the arrearages and not the interest on the principal. The rate to be paid on the note is an entirely different issue that is not now before this Panel.

The majority cites California Civil Code Section 1916–2 which merely provides that for a compounding of interest in California, there must be a provision in the contract. The right to interest which is the subject of this appeal originates from a federal stat-

ute and state law on interest is irrelevant to the interest rate under Section 506(b).

In this regard, the majority completely misses the point clearly made by the Supreme Court in *Ron Pair* that the interest provided for in Section 506(b) is not the same as the interest specified under a contract. The majority would allow the debtor to use Section 1332(b)(2) to abridge rights given the creditor under Section 506(b) and Section 1325(a)(5)(B)(ii). In support of its position, the majority cites several cases that were decided prior to *Ron Pair*. If the Court in *Ron Pair* had held that Section 506(b) does *not* require allowance of interest on contract arrearages absent an appropriate contract provision, the effect of *Ron Pair* on the facts of this case might very well be different. However, I am bound by the holding of the Supreme Court in *Ron Pair* which clearly states otherwise:

> The relevant phrase in § 506(b) is: "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." "Such claim" refers to an oversecured claim. The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest.... Recovery of postpetition interest is unqualified.... Therefore, *in the absence of an agreement,* postpetition interest is the only added recovery available.

*Ron Pair,* 489 U.S. at ——, 109 S.Ct. at 1030, 103 L.Ed.2d at 298 (emphasis added).

There is no conflict between such an interpretation of Section 1325(a)(5)(B)(ii) and Section 1322(b)(2). As the majority

---

1. The payment of interest is implicit in any present value analysis, which typically involves discounting a stream of future payments back to its "present value" through the use of an appropriate discount rate. Under such an analysis, the payment of a specific amount over time must include the payment of interest in addition to the payment of principal (the specific amount at issue), in order to allow the stream of future payments, after discounting, to equal the same value as if payment of the full amount had been made at time zero, i.e., the effective date of the plan.

2. Section 506(b)'s requirement that interest be allowed in certain situations is a statutory obligation that exists regardless of whether interest is otherwise allowed under the contract or applicable nonbankruptcy law. *United States v. Ron Pair Enters., Inc. (In re Ron Pair Enters., Inc.),* 489 U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

Section 1325(a)(5)(B)(ii) is analogous to Section 506(b) and should be subject to a similar reading because it also creates an obligation that exists in situations regardless of whether a right to interest otherwise exists under any contract or applicable nonbankruptcy law.

points out, Section 1322(b)(2) prohibits the modification of the rights of a holder of a secured claim, where the claim is "secured only by a security interest in real property that is the debtor's principal residence."

It has been argued that Section 1322(b)(2) bars modifications even if they benefit the secured creditor. The legislative history of Section 1322(b)(2) was reviewed at length in *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). In defining the meaning of the word "modification" the Ninth Circuit concluded that Congress intended to protect creditors wholly secured by home mortgages from modifications made by debtors that negatively impact creditors rights. *Id.* at 1394–97. However, there is no indication from the legislative history of Section 1322(b)(2) that Congress intended to prohibit modifications that benefit a creditor.

Therefore, Section 1322(b)(2) is clearly no bar to the applicable statutory provisions of Title 11, such as Section 1325(a)(5)(B)(ii), which "modifies" a mortgagee's rights by placing limits on a debtor's ability to ignore the time value of money when providing for a secured creditor's claim in a plan.

I would, therefore, reverse.